**Roy Lee POE, Petitioner,**

v.

**John W. TURNER, Warden, Utah State Prison, Respondent.**

**No. C 156–72.**

United States District Court,
D. Utah, Central Division.

Nov. 10, 1972.

Mary Lou Godbe, Salt Lake City, Utah, for petitioner.

William T. Evans, Asst. Atty. Gen., Salt Lake City, Utah, for respondent.

ALDON J. ANDERSON, District Judge.

The present petition was filed in this court on June 15, 1972. The respondent has since filed a Response and Motion for Summary Judgment.

Petitioner is presently serving a sentence of life imprisonment for the murder of a St. George, Utah, man in November, 1965. The petitioner alleges that said restraint is illegal on the ground that petitioner was deprived of his Sixth and Fourteenth Amendment right to confront certain prosecution witnesses at his 1969 trial in state court. At that trial the prosecution was allowed to read into the record the testimony of two Nevada witnesses who testified and were cross-examined in person at a prior trial of the petitioner for the same offense. The prior trial, conducted in 1966, resulted in a conviction which was overturned on appeal because of prejudicial error in receiving certain photographs in evidence. The prosecution's case at both trials consisted of evidence which was circumstantial in nature. At the second trial, with which we are here concerned, the testimony of one of the witnesses in question, one Louis Lagana, placed petitioner in the victim's automobile shortly after the slaying on the road leading from St. George, Utah, to Las Vegas, Nevada. The testimony of the other witness, one Mary Miner, placed the petitioner in a cafe in Mesquite, Nevada, shortly after the slaying. It could fairly be inferred from this and other similar testimony that Poe was at the time fleeing the scene of the murder. The testimony of both witnesses was disputed at the second trial by the petitioner himself, who took the witness stand on his own behalf. It is petitioner's contention that the state's failure to produce these witnesses at the second trial violated his right to confrontation secured by the Sixth and Fourteenth Amendments.

I

█ The right of confrontation and cross-examination is fundamental and essential to a fair trial.[1] However, an exception has been made to the confrontation requirement "where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant."[2]

█ In the present situation, as in any case in which testimony recorded at a prior criminal proceeding is introduced at a criminal trial, it is necessary to determine whether the witnesses in question were unavailable at the time of petitioner's second trial. The legal standard to be applied in making such a determination is whether "the prosecutorial authorities have made a good-faith effort to obtain . . . [the witness'] presence at trial."[3] In the context of cases where the whereabouts of the witness is known and the witness is located beyond the boundaries of the prosecuting state, but within the United States, it has been held that the prosecuting authorities must make a good-faith effort to secure the presence of the witness. In Barber v. Page[4] the witness, whose prior testimony was introduced at petitioner's state criminal trial, was incarcerated in federal prison in a neighboring state. The prosecuting state made no attempt to secure the presence of the witness, relying upon the old theory that the mere absence of a witness from the jurisdiction was, alone, sufficient ground for dispensing with confrontation, because the court's process would be ineffective beyond the

---

1. Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *See also* Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

2. Barber v. Page, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). *See also* Mattox v. United States, 156

U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

3. Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

4. *Id.* at 723, 88 S.Ct. 1318.

boundaries of its jurisdiction.[5] The United States Supreme Court held that modern procedures which have been established to enable state courts to obtain the presence of federal prisoners as witnesses have "largely deprived [the old theory] of any continuing validity in the criminal law."[6] The Court concluded that state authorities had not made a good-faith effort to secure the presence of the witness and reversed the denial of habeas corpus relief. In the more recent case of Mancusi v. Stubbs,[7] where the Court permitted the introduction of testimony elicited at an earlier trial from a witness who had moved to Sweden, the Supreme Court expressly included the Uniform Act to Secure the Attendance of Witnesses, which has been passed in Utah,[8] as one of the modern procedures which a prosecuting state is obliged to apply if the "good-faith effort" standard is to be met. Today it is not enough merely to show that the witness is without the jurisdiction. In *Mancusi* the Court stated:

> The Uniform Act to secure the attendance of witnesses from without a State, the availability of federal writs of habeas corpus *ad testificandum,* and the established practice of the United States Bureau of Prisons to honor state writs of habeas corpus *ad testificandum,* all supported the Court's conclusion in *Barber* that the State had not met its obligations to make a good-faith effort to obtain the presence of the witness merely by showing that he was beyond the boundaries of the prosecuting State.[9]

The availability of the witness is not, however, the sole concern in determining whether petitioner has been deprived of the right to confrontation. In recent cases dealing with that right the United States Supreme Court has shown its concern for an additional factor. In *Mancusi* the Court stated:

> The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," Dutton v. Evans . . . [400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970)] and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," California v. Green . . . [399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970)]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability" referred to in *Dutton*.[10]

█ Based upon the foregoing discussion, it appears that a twofold approach is proper today in analyzing an alleged denial of the right to confrontation under circumstances such as those presently before the court: first a threshold inquiry into the unavailability of the witness and, second, an inquiry into the adequacy of the cross-examination of the witness when present and testifying at the first proceeding. Today, based upon the decision in *Mancusi*, the inquiry as to unavailability must reveal that the prosecuting authorities made a good-faith effort to produce the witness for cross-examination at the second proceeding, including the application of the Uniform Act to Secure the Attendance of Witnesses in order to bring out-of-state witnesses to the prosecuting state. This may mean that the authorities must also go beyond the boundaries of the prosecuting state to locate a witness

5. 5 Wigmore, Evidence § 1404 (3rd ed. 1940).

6. 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255 (1968).

7. 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed. 2d 293 (1972).

8. Utah Code Ann. § 77–45–13 (1953).

9. Mancusi v. Stubbs, 408 U.S. 204, 212, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

10. *Id.* at 213, 92 S.Ct. at 2313.

whose whereabouts is unknown and, by affirmative evidence, show not only that the witness does not reside in the prosecuting state, but that he does not reside in any state, or within whatever area a good-faith search might be deemed to include.

In the instant case, however, it is not necessary to decide what exact legal standard of unavailability is controlling today. The standard governing the determination of petitioner's claim is the standard which controlled at the time of the second trial. At that time *Barber* had just been decided and *Mancusi* had not yet been heard. The Court in *Barber* stated only that the Uniform Act was *available* where the witness resides out of state. It was not to be inferred from that dictum, which was contained in a footnote, that application of the Act was mandatory as an element of a good-faith effort. Nor was it to be inferred from the opinion in *Barber* that, when the whereabouts of the witness is unknown, good faith requires anything more than proof that the witness cannot be found in the prosecuting state. The opinion in *Barber* did, however, make it clear that at the time of petitioner's second trial good faith was required of the prosecuting authorities in their efforts to secure the presence of witnesses.

It is also clear that the requirement of an inquiry into the adequacy of the confrontation at the first proceeding antedates petitioner's second trial. In *Barber* the Court stated that a preliminary hearing is less apt to provide opportunity for adequate confrontation than a trial.[11] In Pointer v. Texas [12] the Court held that the right to confrontation is applicable in state proceedings and stated the following with respect to preliminary hearing testimony introduced by the prosecution at a later trial:

The case before us would be quite a different one had [the witness'] statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.[13]

The adequacy of the cross-examination at the initial proceeding is, therefore, important to a determination whether the testimony of a witness at the initial proceeding should be admitted at a subsequent proceeding.[14]

## II

With respect to the unavilability of witnesses, the circumstances of the present case differ in one respect from those in Barber v. Page and Mancusi v. Stubbs, cited above. In the instant case the whereabouts of the witnesses had not been ascertained as of the date of trial, nor has it been made to appear that their whereabouts have been discovered since the trial. The problem, therefore, is not whether the state made a good-faith effort to obtain the presence at trial of witnesses residing at known addresses without the jurisdiction, but whether the state made a good-faith effort to ascertain the whereabouts of the witnesses. Only after the witnesses have been located does their production at the trial become a concern.

In the present case subpoenas were issued and state and local law enforcement officials conducted an extensive search for witnesses Lagana and Miner in those places in Nevada and Utah where there was some reason to believe the witnesses might be found, as reflected by extensive testimony elicited by the prosecution at the second trial in the process of laying a foundation for the introduction of the transcribed testimony. The Washington County Attorney, Mr. Fore-

11. Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

12. 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

13. *Id.* at 407, 85 S.Ct. at 1069.

14. *See also* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ; Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

master, was unable to find Mrs. Miner by visiting her last known address in the vicinity of Las Vegas, Nevada, and by questioning a friend of Mrs. Miner living in Las Vegas (Tr., pp. 729–730). Furthermore, he enlisted the aid of the office of the sheriff of Clark County, Nevada, which was unable to locate either witness. A deputy sheriff of Clark County, Nevada, Mr. Robison, testified at the second trial that he looked for Mrs. Miner at a former residence in Mesquite, Nevada, and questioned Mrs. Miner's brother-in-law, without success (Tr., pp. 744–745). Deputy Robison's conclusion was that she had moved away from southern Nevada. Deputy Robison also testified that he looked for Mr. Lagana at the place of his former employment in Glendale and that Mr. Lagana did not reside at the time of the search in Glendale or any of the neighboring towns (Tr., pp. 747–748).

Mr. McCoy, a special investigator employed by the Utah Attorney General, also endeavored to serve subpoenas on Mrs. Miner and Mr. Lagana. He visited witness Miner's last known address near Las Vegas and talked with neighbors there (Tr., pp. 751–752). He also visited the local housing authority, which administered the building in which Mrs. Miner had lived, and searched the local telephone directory for a listing in her name, without success (Tr., p. 752). With respect to witness Lagana, Mr. McCoy contacted his former employer in Glendale, checked telephone listings in Glendale, and consulted the Clark County Sheriff, also without success (Tr., pp. 753–756).

Finally, the Sheriff of Washington County, Utah, also conducted an unsuccessful independent search, spending several days looking for both witnesses in Washington County and Clark County (Tr., pp. 761–765). He contacted law enforcement officials in all the counties of Utah and requested them to consult their local driver license bureaus and telephone listings for the names of the witnesses (Tr., pp. 791–796). Furthermore, he communicated with the Utah Motor Vehicle Division to determine whether an automobile was registered in the name of Mr. Lagana, Mrs. Miner, or Mrs. Miner's husband, all with negative results (Tr., p. 795).

 It is the conclusion of this court that the State of Utah made a good-faith effort to locate these witnesses. It was not merely shown that the witnesses were beyond the boundaries of Utah, although it appears that such a showing was all that was necessary at the time. The search covered both Utah and Nevada. It was shown that the witnesses could not be found at any of the places which were searched on the basis of substantial indications of whereabouts resulting from an investigation of reasonable diligence. The possible investigative leads to which petitioner refers, which indicated that witness Miner might have been living at an unknown address in the East at the time of the second trial, perhaps somewhere in Chicago or New York State, and that witness Lagana might have taken employment with the City of Las Vegas and, later, with a railroad company somewhere in the Midwest, were not indications of sufficient substance as to be included within the necessary purview of a good-faith search. Likewise, the failure, in some instances, to search for Mrs. Miner in her husband's name did not show a lack of good faith. It was not necessary for the state to follow every single lead to its ultimate end. The investigation of substantial leads resulting from a search of reasonable diligence was sufficient to satisfy the good-faith effort required at the time. There is no showing that the search made by the authorities overlooked any substantial leads or was anything but a sincere effort to locate the witnesses. In this case, therefore, the state satisfied the good-faith standard and the introduction of the transcribed testimony in evidence did not violate petitioner's right to confrontation on the ground that the witnesses were available.

The court further concludes that there were sufficient indicia of reliability

available to the trier of fact at the second trial to afford a satisfactory basis for evaluating the truth of the prior statements. Petitioner was represented by counsel at the first trial. Counsel thoroughly cross-examined Mr. Lagana and chose not to cross-examine Mrs. Miner, whose very brief testimony only corroborated the extensive testimony of a fellow worker who testified in person at the second trial and was thoroughly cross-examined (Tr., pp. 536–556). Petitioner points to no infirmities or deficiencies in the confrontation and cross-examination of these witnesses at the first trial. Nor can petitioner point to any reasons counsel might have had on that occasion for exercising restraint in the conduct of the cross-examination, as petitioner perhaps could do had the testimony in question been offered at a preliminary hearing. At a preliminary hearing, where the standard to be met by the prosecution is probable cause, rather than guilt beyond a reasonable doubt, a vigorous defense is less important and might serve only to harden and preserve the prosecution's case. In Barber v. Page the testimony which was introduced into evidence was elicited at a preliminary hearing before a magistrate. The Court held that the introduction of the testimony violated Barber's constitutional right to confrontation. However, as in Mancusi v. Stubbs, where the introduction of testimony elicited at an earlier trial was permitted, the circumstances surrounding the giving of testimony by witnesses Lagana and Miner at the 1966 trial afforded ample basis for evaluating the truthfulness of the testimony and "were significantly more conducive to an assurance of reliability than were those obtaining in Barber . . . ."[15] In Mancusi and in the present case the earlier proceeding was "a trial of a serious felony on the merits, conducted in a court of record before a jury, rather than before a magistrate."[16]

The circumstances of petitioner's first trial insured the full exercise and use of petitioner's right to confront and cross-examine the accusing witnesses. This fact, together with the fact that petitioner actually did adequately confront and cross-examine the witnesses in question and the conclusion that a good-faith effort was made by the state to obtain the presence of those witnesses at the second trial, persuades the court that petitioner has not been deprived of his Sixth and Fourteenth Amendment right to confrontation and petitioner's Petition for Writ of Habeas Corpus is accordingly denied.

---

15. Mancusi v. Stubbs, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

