STATE of Utah, Plaintiff and
Respondent,

v.

Gerald Douglas CHAPMAN,
Defendant and Appellant.

No. 16998.

Supreme Court of Utah.

Sept. 16, 1982.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Defendant/appellant, Gerald D. Chapman, appeals from two felony convictions for Forgery and Making a False or Fraudulent Insurance Claim. On appeal, Chapman claims the trial court committed reversible error in admitting the testimony of two witnesses whom the prosecution claimed were unavailable at the time of trial. The issue we address in this appeal is whether the prosecutor acted in good faith in attempting to secure the attendance at trial of the two witnesses. We hold that the prosecutor did not exhibit good faith in regard to one of the witnesses, and therefore that witness was not "unavailable" so as to permit the introduction of his testimony from the preliminary hearing. We further hold, however, that admission of that testimony constituted harmless error, and that the convictions of defendant/appellant Chapman should be affirmed.

I

Briefly stated, Chapman's convictions are founded on the following facts. On August 28, 1978, Chapman visited the offices of Zion's Insurance Agency and requested and received insurance on a boat. Later that day, Chapman presented to the Central Bank and Trust in Provo, Utah, a copy of the insurance application form and an invoice from the Image Boat Company as part of a boat loan application. Central Bank and Trust issued a cashier's check for $5,500 payable to Chapman and Image Boat Company. Chapman then returned to Salt Lake City and deposited the cashier's check in his account at the Bank of Utah, receiving $350 in cash. The check was endorsed by Chapman and "Image Boat Company by Brent Thompson."

On September 6, 1978, Chapman contacted Zions' Insurance Agency and claimed his boat had been stolen at Lake Powell over the Labor Day weekend. In the meantime, the cashier's check deposited in the Bank of Utah by Chapman was returned by Central Bank and Trust for having a forged endorsement. When this information came to light, the insurance carrier denied the claim and the subsequent prosecution for forgery and insurance fraud was instigated. The testimony at issue in this appeal is that of Donald J. Kearney, Vice President of Hawaiian Boats, Inc., and Richard Scoville, a friend of Chapman's and salesman for the Image Boat Company.

The issue of the "availability" of a witness in this case complements the issues addressed in *State v. Brooks,* Utah, 638 P.2d 537 (1981). In *Brooks,* we adopted the "two prong test" from *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The first requirement of that test is that a witness be unavailable, and the second is that the testimony offered bear sufficient indicia of reliability to permit its introduction at trial. The trial court in *Brooks* found that the state had made good faith efforts to locate the witnesses in question, thereby fulfilling the "unavailability" requirement. In this case, we are concerned with whether the state acted in good faith in attempting to secure the presence at trial of witnesses whose location was known.

At all relevant times, the prosecution knew where to contact Kearney and Scoville. Utah subpoenaes dated January 17, 1980, for a March 5, 1980, trial were mailed to Kearney and Scoville in California and Nevada, respectively. Scoville's affidavit was returned with his signature on the line which attested to the receipt of the subpoena and his willingness to appear as requested. Kearney's subpoena was not returned but the County Attorney received a letter on February 8 from Kearney's employer stating that it would be a financial strain on the company for Kearney to come to Utah and that they had been advised by their attorneys that they were under no legal obligation to comply with the subpoena. Kearney's employer also stated that they would be willing to cooperate in other ways if possible. Kearney was subsequently contacted by a sheriff's detective on February 29. Kearney repeated his employer's objection to his appearing in Utah and advised the detective he would not attend the trial on March 5.

On February 26, Scoville twice contacted the County Attorney. First, he said he would make travel plans to appear in Salt Lake City on March 5, but later in the day advised the County Attorney that his employer would not let him off work to come to Salt Lake City. Scoville provided the County Attorney with the name and phone number of his employer. Apparently, an unsuccessful attempt was made on February 27 to contact the employer. The next contact with Scoville occurred on March 4, the day before trial, when a sheriff's detective contacted him and asked if he would appear as requested the next day. Scoville reiterated his employer's refusal to allow him to take the time off work and stated that he would not appear. The testimony of the sheriff's detective concerning his telephone conversations with Scoville and Kearney was admitted for the purpose of showing good faith, but a timely hearsay objection by the defendant concerning the admissibility of the contents of those conversations for the truth of the statements concerning unavailability was sustained. The state stipulated to the trial court that the "Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceeding", as found in § 77–45–11, *et seq.,* U.C.A., 1953, ("Uniform Act"), was in effect in California and Nevada, and that no attempt was made to use the Uniform Act.

## II

■ Testimony of an unavailable witness given at a preliminary hearing can be used at trial provided prosecutorial authorities have made a good faith effort to obtain his presence at trial. *State v. Oniskor,* 29 Utah 2d 395, 510 P.2d 929 (1973), cert. denied, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1974); *Brooks, supra.* The ruling of the trial court on prosecutorial good faith should not be reversed in the absence of a showing of a clear abuse of discretion. *Gallegos v. Turner,* Utah, 526 P.2d 1128 (1974); *Brooks, supra.* However, we hold that on the facts of this case the trial court did abuse its discretion in admitting the testimony of Donald Kearney. The state,

having had advance notice of the unwillingness of a witness to appear voluntarily, and having made no effort to secure his attendance by means of the Uniform Act, did not demonstrate sufficient good faith to meet the "unavailability" test referred to earlier.

■ The United States Supreme Court has clearly held that the right to confront witnesses at trial and to provide the fact-finder an opportunity to assess their credibility cannot be lightly dismissed. A trial or review court in determining whether the state sustained its burden of showing a good faith effort to obtain the presence of witnesses must take into account currently available cooperative efforts between the states for securing the presence of witnesses in criminal proceedings, *i.e.,* the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See State v. Oniskor, supra* 29 Utah 2d at 398, 510 P.2d 929; *Barber v. Page,* 390 U.S. 719, 723 n. 4, 88 S.Ct. 1318, 1321 n. 4, 20 L.Ed.2d 255, 259 n. 4 (1968); *Mancusi v. Stubbs,* 408 U.S. 204, 212, 92 S.Ct. 2308, 2312, 33 L.Ed.2d 293, 301 (1972); *see also Poe v. Turner,* 353 F.Supp. 672 (D.C.Utah 1972) aff'd., 490 F.2d 329 (10th Cir., 1974). *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 540–41, 21 L.Ed.2d 508, 510 (1969).

■ We have previously stated that use of the Uniform Act is permissive. *See State v. Oniskor, supra; State v. Kazda,* 15 Utah 2d 313, 392 P.2d 486 (1964); *State v. Leggroan,* 15 Utah 2d 153, 389 P.2d 142 (1964). Our holding today reaffirms the principle that a party may undertake steps to secure voluntary attendance at trial but that those steps must meet the "good faith efforts" test. In so holding, we emphasize that the "good faith efforts" test is not to be considered lightly. We cannot affirm the admission of preliminary hearing testimony where the party's efforts to secure the witness's attendance are cursory, where the party had clear indications that the witness would not attend or where the party had obvious means of obtaining those indications but neglected to do so. We note

that the majority rule is to the contrary: that is, utilization of the Uniform Act, where available, is required as a condition precedent to the use of prior testimony. *See State v. Gray,* Mo.App., 616 S.W.2d 102 (1981) and cited cases. We decline at this time to adopt this inflexible rule, but acknowledge that such a rule would be preferable to serious and repeated attempts by the state to infringe upon the right of confrontation, should such circumstances be demonstrated in future cases.

Under the facts of this case however, we affirm our prior rule that the state in the first instance need not resort to the Uniform Act in order to secure attendance of a witness. Voluntary efforts such as those instigated in this case may be employed. Appropriate notice of request for attendance at the trial was provided through the mailing of a subpoena, even though the subpoena did not have any extraterritorial effect. When, however, the state receives a clear message that the witness is aware of the noncompulsory effect of the subpoena and that the witness intends not to comply, for whatever reason, the state must either take additional steps to secure voluntary compliance, with appropriate assurances, or resort to the more compulsory avenues offered by the Uniform Act. Half-hearted last minute efforts, as here, to confirm a witness' intention not to comply are insufficient to demonstrate good faith and override the defendant's constitutional rights of confrontation at trial.

The state argues that no mechanical tests can be applied in determining whether or not the state has made a good faith effort to secure the attendance of the witness, relying on *Gallegos v. Turner, supra; Ohio v. Roberts, supra;* and *Brooks, supra.* Those cases involve efforts to locate a witness, not efforts to secure the attendance of a witness whose location is known. Once the location of a witness is known and the state is aware that efforts to secure voluntary compliance will be unavailing, the state cannot simply choose to disregard statutory mechanisms to secure the compulsory attendance of a witness. *See State v. Ratzlaff,* 27 Ariz.App. 174, 552 P.2d 461

(1976); *State v. Kim,* 55 Hawaii 346, 519 P.2d 1241 (1974).

The state further argues that use of the Uniform Act is permissive and rejects the notion that the language of the act commands resort to it in each and every case where it might be applied, especially where, as here, there is no assurance the missing witness is material. The language to which this argument refers is found in U.C.A., 1953, § 77–45–13, which states that a "judge of court *may issue* a certificate under the seal of the court." (Emphasis added.)

■ The discretion in the statute belongs to the trial court, which may refuse to issue a certificate under the Uniform Act if it finds the witness's testimony immaterial or merely cumulative. *People v. McKinney,* 95 Cal.App.3d 712, 157 Cal.Rptr. 414 (1979); *People v. McCartney,* 38 N.Y.2d 618, 381 N.Y.S.2d 855, 345 N.E.2d 326 (1976); *State v. Tindall,* 294 N.C. 689, 242 S.E.2d 806 (1978). The burden is on the party requesting the use of the Uniform Act to demonstrate that the testimony is material, relevant and admissible. *People v. McCartney, supra.* If, as the state contends, the Uniform Act need not be used when a witness's testimony is "immaterial," then the applicable test for admissibility would state that preliminary hearing testimony may be used if it is immaterial, as opposed to the current test that preliminary hearing testimony may be used only if the witness is unavailable. We reject such a transformation.

### III

■ We find that the trial court did not err in determining that the second witness, Richard Scoville, was "unavailable." Upon receipt of the Utah subpoena, Scoville affixed his signature to the line which acknowledged his receipt of the subpoena and his intention to comply with it. When Scoville first contacted the county attorney on February 26, he said he would attend the trial. Because of these responses, the state had no reason to question Scoville's availability prior to seven days before trial. Af-

ter learning late on February 26 that Scoville would not attend and failing in their attempts to contact Scoville's employer on February 27, the state had only five days to implement the Uniform Act. While it is possible to imagine more concerted efforts by the state to secure voluntary compliance, we hold on these facts that the trial court did not abuse its discretion in determining that the state acted in good faith in attempting to secure Scoville's attendance at trial.

## IV

 The second prong of the test for use of testimony of a witness not present at trial is that the testimony bear sufficient indicia of reliability to permit its introduction at trial. *Ohio v. Roberts, supra; Brooks, supra.* Although we have held that the trial court did not abuse its discretion by finding Scoville "unavailable," the use of his previous testimony must still satisfy the second prong of the test. Utah's Rules of Evidence do not as a matter of law prohibit the use of preliminary hearing testimony at trial if the defendant's right of confrontation is protected. *Brooks, supra.* As in *Brooks,* the defendant here is claiming that omissions in the cross-examination of Scoville, particularly as they relate to his theory that Scoville was in fact responsible for the crime, preclude the substitution of the preliminary hearing testimony for his rights of confrontation at trial. The defendant was represented by the same attorney at the preliminary hearing as at trial, an attorney who availed himself of the opportunity to cross-examine the witness. *State v. Mick,* 229 Kan. 157, 621 P.2d 1006 (1981). Scoville's direct testimony encompassed six pages of transcript and there were eighteen pages of cross-examination covering whether Scoville recognized the handwriting on the invoice, Scoville's knowledge about a used Hawaiian boat in the Image boat yard and any conversations with Chapman concerning it, details about the trip to Lake Powell the weekend the boat was supposedly stolen, and whether Scoville knew if Chapman had reported the boat as stolen. The defendant does not claim he was pro-

hibited from attacking the credibility of Scoville or from asking questions directed to his defense. *Brooks, supra.* This is not the situation hypothesized in *Brooks* where "there had been no cross-examination or superficial or perfunctory cross-examination." *Brooks, id.* The defendant had and took an adequate opportunity for cross-examination at the preliminary hearing and his right to confrontation was not violated. We hold that the trial court did not abuse its discretion in finding that two-prong test of *Ohio v. Roberts* and *State v. Brooks* was satisfied and the preliminary hearing testimony of Richard Scoville was admissible.

We reach the same conclusion regarding the testimony of Donald Kearney. While Kearney was improperly found to be "unavailable," the testimony which was admitted from the preliminary hearing does pass the "reliability" prong of the *Brooks* two-prong test. Kearney's cross-examination was more limited than Scoville's, but the direct testimony was more limited also. Defendant's attorney took the opportunity to cross and recross examine Kearney and has not directed the Court's attention to any matters contained in or related to Kearney's testimony he would have pursued if given another opportunity to question the witness. However, this in itself does not vitiate the error in admitting Kearney's testimony, and we must go on to decide whether such error requires reversal of the defendant's convictions.

## V

 Since the error identified above affected the defendant's sixth amendment right to confront and cross-examine witnesses, it can be held harmless only if this Court is "able to declare a belief that it is harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Oniskor, supra.*

Brent Thompson, the owner of the Image Boat Company, testified at trial that he did not recognize the handwriting on the sales invoice copy and that he was not the "Brent" identified on the sales invoice as a salesman for that purchase. He further testified that the Image Boat Company

never sold a boat to Chapman nor ever owned or sold a boat, motor or trailer similar to that described in the invoice. He said he never saw the cashier's check nor placed the words "Image Boat Company" or "Brent Thompson" on the back of the check. Neither he nor the Image Boat Company received any proceeds from the check.

Donald Kearney, a Vice President of Hawaiian Boat, Inc., testified at the preliminary hearing that he had searched the Hawaiian Boat Company records and he found no record of a boat numbered 108960578 having ever been manufactured or sold, but that a boat numbered 108960676 had been manufactured and sold in June of 1976 to an individual in Spokane, Washington. In light of the in-person testimony of Brent Thompson at trial we conclude that the testimony of Kearney is merely cumulative as to whether the Image Boat Company ever owned or sold a boat with the numbers on Chapman's invoice, and is clearly harmless beyond a reasonable doubt. *Oniskor, supra.*

We affirm.

HALL, C.J., and OAKS and HOWE, JJ., concur.

STEWART, J., concurs in the result.