## HODGES v. SMOOT et al.

No. 6321. Decided May 6, 1942. (125 P. 2d 419.)

See 8 Am. Jur., 683; 5 C. J. S. Appeal and Error, sec. 1657.

*Richard L. Bird, Jr.,* of Salt Lake City, for appellants.

*Jesse P. Rich* and *Newell G. Daines,* both of Logan, for respondent.

MOFFAT, Chief Justice.

The appeal herein is based upon an attack upon a judgment of the District Court of the First Judicial District of the State of Utah. Judgment was entered for the plaintiff and respondent, Hodges. I. A. Smoot and C. M. Croft, defendants and appellants, appeal. The action was filed on the 17th day of April, 1939. Further and amended pleadings form the issues for trial. The action consists of three causes of action. The first cause of action alleged the execution of a promissory note executed and delivered by defendants on the 17th day of September, 1929, upon which certain payments had been made. The answer denies any

payments were made and interposes the statute of limitations.

A jury had been selected and heard all the evidence of the case. The court was of the opinion there were certain facts that, if determined by the jury, would leave the question to be determined a matter of law. Special interrogatories were framed and submitted with general instructions as to weight of evidence, the jury being the sole judge of the fact and the credibility of witnesses. The court adopted the facts found by the jury, made findings and entered judgment.

The court found the note had not been paid, except the following installments: $5 on October 19, 1935; $10 by a note signed by defendant Croft; $50 by defendant Croft in 1935; on December 30, 1936, defendants paid on said note by delivering coal, the sum of $11.05, and on December 30, 1936, the said defendants as a payment on said note executed and delivered to plaintiff their promissory note in the sum of $500 which was renewed October 27, 1937, in the sum of $529.20, and there is now due and owing on the note $1,300 with interest, as specified in the findings and judgment.

The second cause of action is based upon the note for $529.20, bearing date of the 17th day of September, 1937, signed by defendants. The answer of defendants asserts that this note was given "as an accommodation to the plaintiff who was the principal obligor." There is nothing in the note nor any endorsement thereon to show that such was the case. This question was submitted to the jury. Their answer was "No." The court found this note was a renewal note given as a payment of interest on the $1,300 note referred to in the first cause of action, and that the $500 note of which the $529.20 note was a renewal was credited as a part payment on the $1,300 note.

The third cause of action, first count, alleges that on or about the 3rd day of March, 1935, the defendants executed and delivered the promissory note therein set forth in the

sum of $3,931.30 and payable in instalments with interest; and that it has not been paid.

The second count of the third cause of action alleges that the defendants with W. W. Seegmiller executed and delivered on the 29th day of September, 1929, the note therein set out for $2,835 which note has not been paid, except for the payments of $66.65 on December 3, 1929; $33.65 on January 8, 1930; and $2 on November 30, 1934 by I. A. Smoot, and further alleges that the note set out in the first count of this third cause of action was a renewal note of the note set out in this cause of action, and that they represent an identical obligation described in the first count of the third cause of action and does not claim the right to recover upon both.

As to the first count of the third cause of action, defendant's answer asserts the note is not enforceable for failure of consideration, in this, that said note was signed and delivered on condition that plaintiff would secure also the signature of W. W. Seegmiller on said note as a co-maker, which plaintiff failed to do.

As to the second count of the third cause, defendants deny the allegations as to the renewal note or any knowledge or information as to payments made by W. W. Seegmiller, deny any other payment and allege that the third cause of action is barred by the provisions of the statute of limitations, Section 104-2-22, R. S. U. 1933, and that there was no payment or acknowledgment within the meaning of the statute. One of the controversial points as to this cause arises over the evidence about the payment of $2 by the defendant Smoot, which was applied upon this note.

These controverted matters were covered by special interrogatories. The jury was asked to find whether the defendants signed and delivered the $3,931.50 note to plaintiff upon the condition that said note was not to become effective until and unless signed by W. W. Seegmiller as a joint maker. To this inquiry the jury answered in the negative and the court adopted that as the fact.

The several points above presented on this appeal it is claimed are not supported by any substantial evidence. We have carefully examined the record and are unable to agree with appellants. We have been unable to find a single point argued that there is not either a substantial unanimity of the evidence in favor of plaintiff or a direct conflict. Had the matter been submitted to us as a trial tribunal, we may or may not have arrived at the same result; but the result arrived at would have and does depend upon whom the jury or judge and jury believed. None of the witnesses showed more marked bias than ordinary commercial interest would be expected to show. That there was a conflict in the evidence or that one person would have been more inclined to believe one than another does not justify a conclusion that the choice of belief was unreasonable. The most that can be said is that in certain instances there was sharp conflicts in the testimony. *Jensen et al.* v. *Howell et al.*, 75 Utah 64, 282 P. 1034; *Jackson* v. *James*, 97 Utah 41, 89 P. 2d 235.

It is argued the court should have taken the third cause from the jury when both sides had moved for a directed verdict on that cause of action.

The record discloses that in chambers the following occurred: The plaintiff moved the court to direct the jury to find a verdict in favor of plaintiff on the first cause of action, on the second cause of action and on the note set out in the first count of the third cause of action; but if the court for any reason should not see fit to do so, then to direct a verdict in favor of plaintiff and against the defendants on the theory as prayed for in the second count of the third cause of action. Counsel for defendants then moved that the court direct the jury to return a verdict of no cause of action as to the third cause of action.

The court then indicated that when it reconvened it would deny both motions and submit certain special questions to the jury.

When the court reconvened its expressed intention was proceeded with by first denying the motions.

Upon motion of plaintiff over objection of defendants, the case was reopened. Two witnesses were recalled and testified upon direct and cross examination. The court then read prepared instructions to the jury including the questions relating to what the court conceived to be the basic facts. Both sides submitted requests for instructions. At the close of the reading of the interrogatories and instructions, defendants entered exceptions to the refusal of the court to give requested instructions.

Whether the requested instructions were filed or presented to the court before or after the motions relating to a directed verdict does not clearly appear.

Had the question of taking the whole matter from the jury been a clean cut situation, we might be inclined to one side or the other. Even when there is a motion for a directed verdict by both sides, we find conflicting authorities as to whether the matter should be taken from the jury. *Christensen* v. *Utah Rapid Transit Co.*, 83 Utah 231, 27 P. 2d 468. Neither party is in a position to complain as to the procedure followed by the court. There was apparently, if not complete acquiescence of what the court did as a matter of procedure.

There was no error in submitting the cause to the jury. The judgment is affirmed. Costs to respondent.

PRATT, J., concurs.

WOLFE, Justice.

I concur but I think we should squarely decide the question of whether motions for directed verdicts by all adverse parties without request for instructions is a common waiver of a jury and tantamount to an agreement to submit the case to the court. The question was left open in *Christensen* v. *Utah Rapid Transit Co.*, 83 Utah 231, 27 P. 2d 468. Again in *Wood* v. *Kinter*, 86 Utah 279, 43 P. 2d 192, it was said

the rule was not applicable when there was a request for instruction accompanying the motion. There is decided conflict in authority. The majority of the states which have had the question before them have followed the federal rule, which is that motions by all adverse parties for a directed verdict withdraw the case from the jury. We need go no further than the three annotations, American Law Reports, to wit: 18 A. L. R. 1433; 69 A. L. R. 633; 108 A. L. R. 1315, in order to get a complete picture of the state of the law in this country and the reasons given by the decisions in favor of the majority and minority holdings. I favor the minority holding and thus concur in the holding of the court in this case that the factual questions were properly submitted to the jury. I cannot see that both sides waive a jury where plaintiff says "there is no evidence to support my adversary's theory, the evidence is all my way," whilst the adversary says "there is no evidence to support the plaintiff—it shows in law that the plaintiff has no case." The two similar motions based on completely opposite interpretations of the evidence would seem to present to the court definitely a question of whether one or the other was right and if he could not conclude that either was, that very conclusion would involve the idea of a factual question for the jury. I cannot subscribe to the soundness of the reason given in *Sneider* v. *Big Horn Mill. Co.*, 1921, 28 Wyo. 40, 200 P. 1011, and similarly reasoned cases that dual motions show no material disagreement as to the facts of the case which will affect the application of the law. There may be cases where both sides agree as to the facts but each differs as to that alleged inevitable conclusion which may be drawn from them. But more often the difference is as to the matter of the presence of evidence to support the adversary's position. Surely it cannot be said that the parties have in effect stipulated as to the facts or inferences to be drawn therefrom when each says that there is ample evidence to support his position and no evidence to support his adversary's position. The sounder reason is that both sides have in effect consented

to withdraw the case from the jury, but on analysis this reasoning does not stand up because it is contrary to the fact. The fact is that each says it should not go to the jury because the other party has not made a case or a defense under the evidence. The readiness with which the courts following the majority rule seize on some slight provocation to make an exception to the rule on the theory that there is a waiver of the rule—a waiver of a waiver—demonstrates the instability of the rule itself. It were better to adopt a rule which is more in accord with reality than with a fiction. The rule should be that it is for the trial court to rule on each motion for a directed verdict separately and if neither is well taken to put the case to the jury, unless the court concludes that there is no substantial disagreement as to the evidence nor as to any of the inferences or deductions which may reasonably be drawn therefrom in which case in any event there remains but a question of law for the court.

I shall briefly give my views on the contention of defendants that there was no evidence to support certain of the jury's answers to the interrogatories.

There appears to be some evidence that the note for $500 (of which the note for $529 was a renewal) was for the purpose of making a payment on the $1,300 note. Croft testified that it was to bring the "other note up to date so that it could be used" which use, it appears, was as collateral with the bank. Mr. Smoot testified that "I take it, that the one here, taken up as a renewal, was to apply on the other note." He appears to be testifying as to the $500 note which represented payment as indorsed on the $1,300 note, and not the $529 note which was a renewal of the former. In consequence I think there is some evidence that the $500 note was to apply as payment on the $1,300 note and its application thus tolled the statute.

The note for $529, the basis for the second cause of action being a renewal of the $500 note which itself was found not to be for accommodation must, therefore, support a judgment for plaintiff.

∎

As to the third cause of action: While it appears that the note for $3931.50 was designed for the signature of W. W. Seegmiller as well as the defendants, there is evidence that these defendants, knowing that they were bound on the $2,835 note which the $3,931 note was intended to renew, meant to bind themselves absolutely. Hodges testified that he promised "to try" to get Seegmiller's name on the $3,931 note; also that Croft was "peeved" when he found that that had not been done. The fact that Croft was peeved instead of demanding the note back on the ground that it was not his obligation because a condition had not been met is evidence of the fact that he was disappointed because Seegmiller had not joined them as an obligor, rather than that he was "peeved" because the paper had not been turned into an obligation.

It would seem that if Seegmiller's name to the note was a condition of its validity he would have demanded its return. Hodges retained the note for $2,835 for which the note for $3,931 was a renewal. But this may have been because Seegmiller was still responsible on that note. Other arguments are made by appellants to show the unreasonableness of the jury's verdict in regard to the interrogatory as to whether the $3,931 was given absolutely or conditionally, but they are for the most part based on deductions predicated on the theory that Hodges had a rather intricate knowledge of the law and he must, therefore have necessarily concluded that he was holding the $2,835 because he knew that the $3,931 note was delivered conditionally only. Laymen usually do what they think best for their own interests without knowledge of refined legal propositions. The jury may readily have concluded that Hodges held the old note because he thought that Seegmiller was still bound by it without thought or knowledge of the asserted legal proposition that a release of one obligor releases the other.

The jury finding as it did respecting the first count of the third cause of action, the second count drops out of the picture. It is probably well for the plaintiff that it did so,

for the evidence that Smoot paid $2 to Hodges' son on account of a $2,835 note appears too far-fetched to inspire credence, especially in view of the reasonable explanation given by Smoot as to the purposes for which the money was paid to the son.

McDONOUGH, Justice.

I concur.

The question of whether the concurrent motions of the parties for a directed verdict authorize the court to take the case from the jury is not the same question as that here raised; viz, was it error on the part of the court, after such motions were made, to submit certain questions of fact to the jury? In several jurisdictions in which the rule prevails that such motion on the part of both parties amounts to a submission of the whole case to the court, it is nevertheless held that the court may submit the issues of fact to the jury. *Harvey E. Mack Co.* v. *Ryan,* 80 Mont. 524, 261 P. 283; *Phipps* v. *Stancliff,* 118 Or. 32, 245 P. 508; *McClure* v. *Wilson,* 109 Wash. 166, 186 P. 302, 18 A. L. R. 1421; *North Philadelphia Trust Co.* v. *Smith,* 3 Cir., 13 F. 2d 585, 587.

In the last-cited case the Circuit Court of Appeals of the Third Circuit said:

"The second assignment of error calling for discussion relates to the circumstance that on the close of the testimony each party moved the court to instruct a verdict in his favor and the court, declining both motions, submitted the case to the jury on what it regarded—and what actually were—sharply controverted issues of fact. * * * In this action of the court the defendant charges error under authority of *Beuttell* v. *Magone,* 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, and *Williams* v. *Vreeland,* 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038, and on his interpretation of those two decisions that joint motions for binding instructions impose a mandate upon the court to withdraw issues of fact from the jury and decide them itself and when this is done and the court directs the jury to render a verdict for one party or the other, both are concluded by the findings made, if there is any evidence to sustain them.

"The latter part of this proposition is old law; the former part is new and is a step beyond anything contained in the many cases which, in our research, have come to our notice. All the cases which have followed the law of the Beuttell and Williams cases (collated in 3 Rose's Notes on United States Reports, 556, and 5 Id. 1156, and later ones found in 25 Shepard's United States Citations, 31, 50) are cases where, responding to motions for directed verdicts made by both parties, courts have directed verdicts for one or the other. Such a request, joined in by both parties, the Supreme Court in the Beuttell case said is 'not equivalent to a submission of the case to the court, without the intervention of a jury, within the intendment of Rev. Stat. §§ 649, 700 [28 U. S. C. A. §§ 773, 875],' under which provisions, when complied with by the parties, the court, quite obviously, must take the case. Continuing, the Supreme Court said: 'As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given.' Citing the Beuttell case, the same court in the Williams case said: 'Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' *Sampliner* v. *Motion Picture Patents Co.*, 254 U. S. 233, 239, 41 S. Ct. 79, 65 L. Ed. 240. But the trial court is not compelled to accept the assumption of the parties that the facts are not in dispute. On the contrary, when it finds the facts openly in dispute, it may submit them to the jury for decision. Any other view of the court's right and duty would enable the parties, after trying their case in part to the jury, to shift and then try it to the court without complying with the provisions of the Revised Statutes, §§ 649, 700, enacted as the orderly method of doing that thing."

I am of the opinion for the reasons stated in the above cited cases that no error was committed by the trial court in submitting to the jury the questions of fact it deemed in dispute whether or not we adopt the rule prevailing in the jurisdictions in which such cases arose affirming the right of the court to take the case from the jury in response to concurrent motions for a directed verdict.

LARSON, J., dissents.