**STATE of Utah, Plaintiff and Appellee,**

v.

**Johnny Wade DRAWN, Defendant and Appellant.**

**No. 890253–CA.**

Court of Appeals of Utah.

May 2, 1990.

James A. Valdez, Elizabeth Holbrook (argued), Salt Lake Legal Defender Asso., Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for plaintiff and appellee.

Before DAVIDSON, BILLINGS and ORME, JJ.

DAVIDSON, Judge:

Defendant appeals his conviction of aggravated robbery. He argues that the trial court erred by failing to suppress a witness's in-court identification of defendant, by admitting hearsay statements of unavailable witnesses, and by enhancing his sentence for the use of a firearm. We affirm.

On August 21, 1988, a man entered the Payless Shoe Store located in Magna, Utah, wearing pink- and beige-colored nylon stockings over his head and carrying a sawed-off shotgun. Two salespersons were working at the time. The man ordered one salesperson to hand over all the money in the register and the other salesperson to take all the money out of the safe and place it in a corduroy bag. The salesperson working at the register testified that she was looking at the man's face "the whole time." The second salesperson only viewed the man briefly.

After the robbery, a woman driving through the mall parking lot observed a man wearing something pink on his head, running alongside the Payless Shoe Store attempting to shove something into a bag. The witness observed the man enter a small white station wagon driven by a black woman and watched the car exit the parking lot heading southbound on 5600 West and later turning west on 3500 South. She reported this information to the police after discovering that the shoe store had been robbed. She later identified the car after the police had detained the car and its occupants.

Several blocks from the robbery, a fourth witness observed a light-skinned black man exit a white compact station wagon. Several minutes later, he observed a police officer pull the station wagon over and handcuff the vehicle's two remaining female occupants. After observing this, he drove down the road where he observed the same black man. The witness lost sight of the man for about fifteen or twenty minutes, but later observed the same man wearing different clothing. The witness thereafter lost sight of the black man.

West Valley City Police Officer Kory Newbold responded to the Payless robbery. While driving to Payless he observed a possible suspect vehicle travelling in the opposite direction. The officer turned around, and pursued the vehicle. He momentarily lost sight of the vehicle but later found it on a side street and pulled it over. He questioned the two black female occupants, but released them because they did not match the reported description. Upon returning to the patrol car, the officer received updated information on the suspects and getaway vehicle. With this knowledge, he again pulled the vehicle over and this time arrested the occupants.

At the arrest scene, one witness identified the car as the getaway vehicle, another recognized one of the women suspects as having been in the shoe store earlier in the day. The bag of money and the shotgun used in the robbery were also found near the scene of arrest. At the police station, the two suspects were interviewed by Detective Ron Edwards of the West Valley City Police Department. Detective Edwards later testified that both women admitted that they waited in the car while defendant robbed the shoe store. Edwards also testified that both women told him that after the robbery, they momentarily evaded police, let defendant out, and threw the money bag and gun out the window. Neither woman testified at trial. Instead, their testimony was admitted through Detective Edwards under the unavailability exception to the hearsay rule. *See* Utah R.Evid. 804.

Defendant was arrested the day after the robbery and was questioned by Detective Edwards. Detective Edwards later testified that defendant confessed to the robbery after asking defendant's parole officer and another police officer to leave the interrogation room. Neither the testimony of the two women nor defendant's testimony was recorded.

Two lineups were held several weeks after the robbery. None of the witnesses brought to the lineup could identify defen-

dant as the perpetrator of the crime. At trial, however, one of the Payless employees identified defendant as the robber. Over defendant's objections, her in-court identification was allowed.

## IN–COURT IDENTIFICATION

■ Defendant first argues that the court erred in not suppressing the witness's in-court identification. He contends that the identification, made while defendant was sitting at counsel table, was impermissibly suggestive and denied him a fair trial. Although the witness previously failed to identify defendant at a lineup, at trial she claimed to have independent recollection of defendant as the perpetrator of the crime:

Well, when I walked in I sat down and he turned around and it hit me like a ton of bricks. I recognized him. And that was it. And everything about him—the features—I just ... it was him. I just couldn't—I don't know. But I recognized him. The way he moved, the way his back was over, the wrinkles on the forehead, his nose, everything.

The suggestiveness of the witness's in-court identification is reviewed under the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *State v. Thamer*, 777 P.2d 432, 435 (Utah 1989); *State v. McCumber*, 622 P.2d 353, 357 (Utah 1980). We apply a two-part test to determine if identification procedures are impermissibly suggestive:

[W]as [the identification procedure] so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification.... [I]f the [identification procedure was] impermissibly suggestive, then the in-court identification must be based on an untainted, independent foundation to be reliable.

*Thamer*, 777 P.2d at 435. Here, the in-court identification was suggestive and carried a likelihood of misidentification. *See State v. Long*, 721 P.2d 483, 487–88 (Utah 1986). We therefore apply the second prong of the *Thamer* test to determine if the identification was "based on an untainted, independent foundation." *Thamer*, 777 P.2d at 435. We will not reverse a trial court's evidentiary rulings absent a showing that the lower court abused its discretion. *See, e.g., State v. Barela*, 779 P.2d 1140, 1142 (Utah Ct.App.1989).

In considering the likelihood of misidentification, we review the following factors:

the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Long*, 721 P.2d at 491 (quoting *Neil*, 409 U.S. at 199, 93 S.Ct. at 382).

■ The salesperson's in-court identification focused not on defendant's face, but rather on his features, movements, and forehead wrinkles. In her statement to police, made on the day of the robbery, she stated that the robber "wasn't white," that his "hair and skin was [sic] a little dark," and the suspect was possibly hispanic or Mexican. Defendant is in fact a light-skinned black man. The witness was also looking at his face "the whole time" during the robbery. There is no serious inconsistency between the prior description and the subsequent in-court identification to make the identification unreliable.[1]

While defendant's presence at counsel table may have been suggestive, we cannot say that under the totality of circumstances there was "a very substantial likelihood of irreparable misidentification," since an adequate independent basis for the identification exists. *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254 (quoting *Simmons v. United*

---

1. In addition, any possible error attributable to the alleged misidentification was cured by the detailed jury instruction which properly apprised the jury of the inherent limitations of eyewitness identification. The instruction given

in this case was taken verbatim from *State v. Long*, 721 P.2d at 494 n. 8. The Utah Supreme Court expressly approved this instruction as satisfying the need for cautionary instructions in eyewitness identification cases.

*States*, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968)). "The defect, if there be one, goes to weight and not to substance." *Id.* at 117, 97 S.Ct. at 2254. We find no abuse of discretion in admitting this evidence.

## ADMISSION OF HEARSAY STATEMENTS

Defendant next argues that the trial court abused its discretion by admitting the hearsay statements of Rosemary Mar and Genova Marcellus, the two women arrested in the getaway car. . He contends that the State neither proved unavailability nor that the testimony bore sufficient indicia of reliability. He maintains that admission of this evidence violates his right to confrontation guaranteed by the sixth amendment to the United States Constitution and article I section 12 of the Utah Constitution.[2]

■ Hearsay statements of a witness are admissible at trial provided the State can show the witness's unavailability and prove that the statement bears adequate indicia of reliability. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *State v. Chapman*, 655 P.2d 1119, 1121 (Utah 1982); *State v. Brooks*, 638 P.2d 537 (Utah 1981); *Barela*, 779 P.2d at 1142; Utah R.Evid. 804. With narrow exceptions, the confrontation clause guarantees the accused "the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. Indeed, in the usual case, the State "must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against defendant." *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2538; *see also Webb*, 779 P.2d at 1113.

Utah R.Evid. 804(a)(5) provides:

"Unavailability as a witness" includes situations in which the declarant:

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

The State bears the burden of proving unavailability by competent evidence. *Barela*, 779 P.2d at 1142. "[F]or a witness to be constitutionally unavailable, it must be practically impossible to produce the witness in court. It is not enough to show that the witness would be uncomfortable on the stand or that testifying would be stressful." *Id.* at 1142–43 (quoting *Webb*, 779 P.2d at 1113).

■ Here, the deputy county attorney subpoenaed each witness three times prior to trial.[3] Detective Edwards also called Marcellus's home and spoke with the witness's mother. The witness's mother told the officer that her daughter had received the subpoena and would be in court on the designated date. Detective Edwards also testified that he was "unable to locate [Mar] at all." Her last known address was listed as a Redwood Road apartment complex. A check of the apartment indicated that Mar no longer lived there. Detective Edwards's search for Mar further consisted of questioning police informants, searching police files, and working with a Salt Lake County investigator. All of his efforts were unsuccessful.

We conclude that the State's efforts comply with the hearsay exception unavailability requirements. *See Webb*, 779 P.2d at 1113. The State subpoenaed each witness several times, attempted to make personal

---

**2.** Defendant does not contend that the analysis under the Utah Constitution is any different from the analysis under the federal constitution. We therefore review his argument under the federal constitution. *State v. Webb*, 779 P.2d 1108, 1111 n. 4 (Utah 1989).

**3.** The Marcellus subpoenas were sent to the home of the witness's mother. Subsequent

communications between the county attorney's office and Marcellus's mother indicate that Marcellus, who was defendant's friend, received the subpoenas and intended to attend the trial. The Mar subpoenas were sent to her last known address but were returned by the post office as undeliverable.

contact, and used informants and other police resources to locate them, all of which proved unsuccessful. Despite the State's good faith efforts neither witness could be located nor produced in court. *See id.*

■ We next determine if the unavailable witness statements bear adequate "indicia of reliability." "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded at least absent a showing of particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. The State contends that the witnesses made statements against their penal interest which fall within a rooted hearsay exception.

Utah R.Evid. 804(b)(3) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In determining if a statement is one made against penal interest, we look to the circumstances under which the statement was given. *See* E. Cleary, *McCormick on Evidence* § 279 (3rd ed. 1984). Statements that would not subject a person to criminal liability, Utah R.Evid. 804(b)(3), or statements made in an obvious attempt to curry favor with the authorities by inculpating

defendant and exculpating declarant, lack trustworthiness.[4] *See Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986) (codefendant's confession, which was given only after he was told defendant had implicated him, was presumptively unreliable); Fed.R.Evid. 804, Notes of Advisory Committee on Proposed Rules.

We review the trial judge's admission of this evidence under the clear abuse of discretion standard. *Brooks,* 638 P.2d at 539 (Utah 1981).

We find no abuse of discretion in the admission of the hearsay statements. When the statements were made, Mar and Marcellus were under arrest and suspects in the Payless robbery. Their statements were substantially similar. Furthermore, other witnesses observed a white station wagon leaving the crime scene, a black man exiting the vehicle before it was pulled over by police, and the police discovered money and the shotgun near the arrest scene.[5] The declarations implicated defendant, but also subjected the two women to prosecution as accomplices. *See* Utah Code Ann. § 76–2–202 (1978) (any person who aids another in commission of a crime is criminally liable as a party). The witnesses also aided defendant's escape and disposed of incriminating evidence. The State could have prosecuted the two women for the robbery. The statements of the women were made against penal interest and there was no error in admitting them through the testimony of Detective Edwards.

## CUMULATIVE SENTENCES

■ Defendant next argues that the imposition of a five year sentence for the use of a firearm in addition to the sentence for aggravated robbery is impermissible. He argues that the firearm enhancement can-

---

4. Some jurisdictions have imposed additional safeguards by requiring both inculpatory and exculpatory statements to be corroborated. *See* E. Cleary, *McCormick on Evidence* § 279 (1984). *See also United States v. Casamento,* 887 F.2d 1141, 1170 (2d Cir.1989).

5. Both Marcellus and Mar also told Edwards that they were waiting in the car when defen-

dant came running back and said that he had "just robbed a store." The two then stated that defendant got into the car, Marcellus drove away, and defendant was let out of the car before the police detained and arrested the two women. Furthermore, both women admitted disposing of the money and shotgun before being arrested.

not be applied where an element of the underlying crime is the use of a firearm.

Both this court and the Utah Supreme Court have recently ruled that imposition of the firearms enhancement penalty in aggravated robbery cases is permissible and comports with the legislature's intent in imposing an additional penalty when a firearm is used in the commission of a felony. *State v. Russell*, 791 P.2d 188, 191 (Utah 1990); *State v. Webb*, 790 P.2d 65, 85–87 (Ct.App.1990).

The legislature has clearly expressed its intention to more severely punish *all* felons who use a firearm. *Russell*, 791 P.2d at 191. Defendant's sentence has not been doubly enhanced in a manner inconsistent with the legislature's intent nor is that intent ambiguous to any extent. Rather, he was convicted of aggravated robbery but was given an enhanced sentence because a firearm was used to commit the crime.

We find no error in the trial court's rulings and accordingly affirm defendant's conviction and sentence.

BILLINGS and ORME, JJ., concur.