2016 UT App 57

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DESEAN MICHAEL GOINS,
Appellant.

Opinion
No. 20140009-CA
Filed March 24, 2016

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 131906358

Richard G. Uday, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
JAMES Z. DAVIS[1] and KATE A. TOOMEY concurred.

ORME, Judge:

---

1. Judge James Z. Davis began his work on this case as a member of the Utah Court of Appeals. He retired from the court, but thereafter became a Senior Judge. He completed his work on this case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6). Judge Davis, a member of this court from 1993 until late in 2015 when he became a senior judge, passed away on February 27, 2016. Judge Davis was twice our presiding judge and three times our representative on the Judicial Council. More importantly, he was an esteemed colleague and good friend. His wit, wisdom, and dedication will be sorely missed.

¶1 Desean Michael Goins (Defendant) was convicted of aggravated assault, a third degree felony, *see* Utah Code Ann. § 76-5-103 (LexisNexis Supp. 2015), and threatening with or using a dangerous weapon in a fight, a class A misdemeanor, *see id.* § 76-10-506.[2] Defendant now appeals both convictions, arguing that the trial court erroneously found that a witness was unavailable and allowed the witness's prior testimony to be used against Defendant on that basis. Because there was no error in the trial court's determination of unavailability, and because Defendant had the opportunity to cross-examine the witness when he gave his prior testimony, we affirm.

BACKGROUND

¶2 One morning in July 2013, Defendant and his girlfriend set off on a search in downtown Salt Lake City with a very specific goal: to find a homeless man (Witness) whom Defendant believed had stolen his cell phone. They found Witness outside a homeless shelter for men. With knife in hand, Defendant confronted Witness, who denied taking the phone and hurried away.

¶3 The couple then made their way to Pioneer Park, a traditional haunt of Salt Lake's homeless denizens, where one of Witness's friends (Victim), also a homeless man, was sleeping on his blanket. Defendant's girlfriend woke Victim and asked if he had seen Witness. Defendant, waving the knife he still carried, complained that Witness had stolen his phone. When Defendant

---

2. Although some of the statutes cited in this opinion have been amended since July 2013, when the incident giving rise to the charges against Defendant occurred, the amendments do not affect our analysis. Accordingly, for ease of reference we cite the most recent codification of the statutes.

encroached on Victim's personal space, Victim pushed Defendant off the blanket. An altercation ensued, during which Defendant bit off Victim's earlobe. Both men stood up and squared off once again, and Defendant then retrieved his knife, which he had dropped during the scuffle, and stabbed Victim under the left arm. Soon thereafter, police arrived and arrested Defendant. Defendant was later charged in connection with the assault of Victim and the brandishing of the knife against Witness.[3]

¶4     Prior to the preliminary hearing, the prosecution asked Salt Lake City police bike patrols to locate Victim and Witness. The officers were able to locate both men, who spent much of their time together, "based primarily on a description of [Victim's] missing earlobe," even though they did not have a description of Witness. Victim and Witness arrived together at the preliminary hearing with a pastor from a church both men regularly visited. The prosecution seized the opportunity to keep more regular contact with both men through the pastor,[4] a man who had the trust of both Witness and Victim.

---

3. Defendant was also charged with—and acquitted of—the felony of mayhem, nearly forgotten outside the confines of first-year Criminal Law in law school. *See* Utah Code Ann. § 76-5-105 (LexisNexis 2012) ("Every person who unlawfully and intentionally deprives a human being of a member of his body, or disables or renders it useless, or who cuts out or disables the tongue, puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."). Despite the rarity of mayhem convictions in modern times, they are not unheard of. *See, e.g., State v. Fairclough*, 44 P.2d 692, 692–93 (Utah 1935) (affirming conviction for mayhem).

4. By the time of the trial, the pastor had left the state for a new position. Because both the pastor and his successor affirmed that service was made on both Witness and Victim, and because the

(continued…)

¶5    The prosecution regularly followed up with the pastor and emailed him the trial information for him to pass along to Witness and Victim. The pastor verified that the two men received the notification. A few weeks before trial, the pastor informed the prosecution that Witness had gotten into some trouble, been jailed, and fallen out with Victim. After receiving this information, the prosecutor contacted the jail, but Witness had already been released. From that time forth, neither Victim nor the pastor, both of whom knew Witness well and could recognize him by sight, saw or heard from Witness, and no one saw Witness with his former friends or in his former hang-outs. On the eve of trial, the prosecution contacted the jail to see if Witness was incarcerated again, but he was not.

¶6    Trial was scheduled to begin on October 23, 2013, but was continued one day because no jury had been called for that date. At that time, the prosecution asked the trial court to declare Witness unavailable because Witness did not appear for trial and the prosecution was unable to locate him. The prosecution also asked the trial court to admit Witness's preliminary hearing testimony during the trial. Over an objection raised by Defendant's counsel that Witness "was not 'unavailable,'" the trial court granted the motion and indicated that it would allow the preliminary hearing testimony at the rescheduled trial. At trial, which began the following day, the jury convicted Defendant of aggravated assault, for the attack on Victim, and of threatening with a dangerous weapon during a fight, for his confrontation of Witness. Defendant appeals, and we affirm.[5]

---

(…continued)
prosecution utilized the second pastor in the same manner as the first, we use "the pastor" when referring to either of the two pastors.

5. Although Defendant apparently appeals both the conviction related to the assault of Victim and the one for brandishing the
                                                                    (continued…)

## ISSUES AND STANDARDS OF REVIEW

¶7 Defendant argues that the trial court erred in finding Witness to be unavailable under rule 804 of the Utah Rules of Evidence and in permitting Witness's preliminary hearing testimony to be admitted under that rule as prior testimony. "We review the district court's evidentiary rulings under an abuse of discretion standard. However, error in the district court's evidentiary rulings will result in reversal only if the error is harmful." *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 17, 351 P.3d 832 (citations and internal quotation marks omitted). "The district court's decision to admit testimony that may implicate the confrontation clause is also a question of law reviewed for correctness." *State v. Poole*, 2010 UT 25, ¶ 8, 232 P.3d 519.

## ANALYSIS

¶8 We note, preliminarily, that a statement is hearsay if (1) the witness made the statement outside of the current trial or hearing and (2) a party offers the statement "to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c)(1)–(2). Hearsay is inadmissible, unless an exception applies. *See id.* R. 802. It is the interpretation and application of one such

---

(…continued)

knife against Witness, we agree with the State that Witness's testimony was relevant only to the charge relating to Witness. Witness was *not* a witness to the assault of Victim and offered no testimony on that point at the preliminary hearing; therefore, even were we to discern an error in the presentation of Witness's preliminary hearing testimony to the jury—which we do not, *see infra* ¶¶ 12–15, 18–20—we would still affirm Defendant's assault conviction because the alleged error would be harmless as to that charge.

exception—the admission of prior testimony by an unavailable potential witness—that we address in this opinion. *See id.* R. 804(b)(1).

## I. The Trial Court Did Not Abuse Its Discretion in Finding That Witness Was Unavailable.

¶9    Utah law requires that the party offering evidence in the form of witness testimony make reasonable efforts to procure the witness's testimony at trial. *Id.* R. 804(a)(5). "[C]onstitutional unavailability is found only when it is 'practically impossible to produce the witness in court.' . . . [E]very reasonable effort must be made to produce the witness." *State v. Menzies*, 889 P.2d 393, 402 (Utah 1994) (citations omitted).

¶10    But "[a] good faith search does not mean that every lead, no matter how nebulous, must be tracked to the ends of the earth." *Poe v. Turner*, 490 F.2d 329, 331 (10th Cir. 1974) (determining that the prosecution was under no obligation to investigate vague claims that one prosecution witness had "moved to somewhere in the state of New York" and that another "was said to have applied for employment with the Santa Fe Railway in the 'midwest'"). In essence, although a party must make every reasonable effort to procure the in-court testimony of the witnesses that the party wishes to use, the party is not, as the State puts it, required to do "everything humanly possible" to do so. Thus, "Rule 804(a)(5) does not require a patently futile attempt to serve a subpoena on a potential witness . . . whose physical location and address are completely unknown." *Brown v. Harry Heathman, Inc.*, 744 P.2d 1016, 1018 (Utah Ct. App. 1987). *See also State v. Carter*, 888 P.2d 629, 645–46 (Utah 1995) (holding that State's efforts to locate witness were reasonable where it contacted United States Marshal's Office, which had an outstanding warrant for arrest of witness, and where federal officials "could not provide any concrete information as to his present location, other than that he might

be found in Mexico or southern California"), *abrogated by statute on other grounds as recognized by Archuleta v. Galetka*, 2011 UT 73, ¶ 70, 267 P.3d 232.

¶11   In *State v. Drawn*, 791 P.2d 890 (Utah Ct. App. 1990), we concluded that the prosecutor's efforts to obtain two witnesses' testimony were reasonable. In that case, the prosecution subpoenaed the witnesses three times before trial; spoke with and was assured of the presence of one witness at trial by that witness's mother; visited the last known address of the other witness, but discovered that the witness had moved without leaving a forwarding address; questioned police informants; and searched police files for evidence of the whereabouts of the missing witness. *Id.* at 893. Under such circumstances, we held that the prosecution's "efforts compl[ied] with the hearsay exception unavailability requirements." *Id.* On the other hand, in *State v. Chapman*, 655 P.2d 1119 (Utah 1982), the Utah Supreme Court concluded that the prosecutor's efforts to locate a witness were unreasonable and the witness was not unavailable "where efforts to secure the witness's attendance [were] cursory, where the party had clear indications that the witness would not attend or where the party had obvious means of obtaining those indications but neglected to do so." *Id.* at 1122. *See also id.* at 1124–25 (affirming the district court, nonetheless, because the district court's improper admission of the testimony was harmless error).

¶12   The instant case is much more like the events in *Drawn* than those discussed in *Chapman*. As in *Drawn*, but unlike in *Chapman*, the prosecution in this case went to considerable effort to obtain Witness's testimony at trial. Prior to the preliminary hearing, the prosecution sent out police bike patrols to locate Victim and Witness, and the officers located both men, even though they were part of Salt Lake City's large homeless population, based mostly on Victim's unfortunate lack of one earlobe. There was nothing as distinctive in Witness's appearance, but luckily for the prosecution, Witness was often in

the company of Victim. The two were homeless, presenting obvious challenges to staying in touch, but when Victim and Witness arrived together at the preliminary hearing with the pastor, whom both men trusted, the prosecution seized upon the opportunity to use the pastor as a vehicle for staying in more regular contact with both men. The prosecution followed up regularly with the pastor and emailed him Defendant's trial information. And the pastor verified that the two men personally received this notification.

¶13    A few weeks before trial, however, the pastor informed the prosecution that Witness had gotten in some trouble, been jailed, and fallen out with Victim. After receiving this information, the prosecutor contacted the jail, but Witness had already been released. From that time forward, neither Victim nor the pastor saw or heard from Witness, and Witness was no longer found with his former friends or in his former haunts. It is far from clear that he even remained in Utah.[6] Thus, although the prosecution did not re-enlist the police bike patrols to locate Witness, it did not need to. It had no idea where to send the

---

6. Research shows that not only are homeless people more mobile than the population at large but that a significant percentage of homeless individuals engage in interstate migration, Peter H. Rossi, Down and Out in America: The Origins of Homelessness 126 (The University of Chicago Press 1989). *See also* Jennifer Amanda Jones, *Problems Migrate: Lessons from San Francisco's Homeless Population Survey*, Nonprofit Quarterly (June 26, 2013), *available at* http://nonprofitquarterly.org/2013/06/26/problems-migrate-lessons-from-san-francisco-s-homeless-population-survey/ [https://perma.cc/JHE8-7QS2] ("Almost 40% of San Francisco's homeless population became homeless in a city other than San Francisco. Most (24%) hail from California, but many (15%) from around the United States.").

patrols, and the police would have been unlikely to recognize Witness when not in the presence of Victim. Realistically, the pastor and Victim were more likely to spot Witness than were randomly dispatched bike patrols. Additionally, on the eve of trial, the prosecution also contacted the jail to see if Witness might once again be incarcerated. They learned he was not.

¶14    Whether the prosecution "could have done more to ensure . . . [Witness] showed up for the trial" is not the issue; instead, we consider whether the prosecution's efforts were reasonable. As the State noted, "[a] good faith search does not mean that every lead, no matter how nebulous, must be tracked to the ends of the earth," *Poe v. Turner*, 490 F.2d 329, 331 (10th Cir. 1974), and we conclude that the State acted reasonably even though "[Witness] could [neither] be located nor produced in court," *Drawn*, 791 P.2d at 894.

¶15    Indeed, the instant case is, in our estimation, an even stronger case for affirmance than *Drawn* because here Defendant acquiesced in both the method of keeping tabs on Witness and in the means of serving him notice of the trial. First, the prosecution told the magistrate at the preliminary hearing that the pastor was the best way to stay in contact with Witness. If Defendant had an objection to this method of communication as a substitute for more formal service, unusual though it may have been, the time to contest it was not at trial but at the preliminary hearing when it was first proposed. Where "there is 'apparent[] if not complete acquiescence [in] what the court did as a matter of procedure,' '[n]either party is in a position to complain as to [that] procedure' on appeal." *Brown v. Babbitt*, 2015 UT App 291, ¶ 14 n.9, 364 P.3d 60 (alterations in original) (quoting *Hodges v. Smoot*, 125 P.2d 419, 421 (Utah 1942)). Second, Defendant explicitly accepted the prosecution's proffer of its efforts to get Witness to appear. For example, although Defendant faults the trial court for "not even attempt[ing] to get testimony from the pastor regarding the service to [Witness]," in doing so he ignores the fact that the trial court offered him the opportunity to get

such testimony from the pastor—an opportunity that he declined. Because the prosecution made reasonable efforts to locate Witness, though perhaps not all efforts "humanly possible," we agree with the trial court that the prosecution acted in good faith, and we conclude that the trial court did not abuse its discretion in finding Witness to be unavailable for purposes of rule 804.

II. Witness's Testimony Was Properly Admitted Under Rule 804.

¶16    If the potential witness is unavailable, prior testimony may be admitted if the witness gave the testimony "as a witness at a . . . hearing," Utah R. Evid. 804(b)(1)(A), and the testimony is "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination," *id.* R. 804(b)(1)(B). Because a preliminary hearing is a "hearing" under rule 804(b)(1)(A), the introduction of preliminary hearing testimony may be allowed in lieu of the in-court testimony of the witness if the court finds the potential witness to be unavailable. *State v. Brooks*, 638 P.2d 537, 541 (Utah 1981). Rule 804(b)(1)(B) essentially incorporates the requirements of the Confrontation Clause of the United States Constitution. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (holding that the Confrontation Clause does not "allow[] admission of testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination"). It is instructive that in *California v. Green*, 399 U.S. 149 (1970), the United States Supreme Court concluded that if a witness is unavailable, preliminary hearing testimony is admissible under the Confrontation Clause because the circumstances of a preliminary hearing

> closely approximat[e] those that surround the typical trial. [The witness is put] under oath; respondent [i]s represented by counsel . . . ; respondent ha[s] every opportunity to cross-examine [the witness] as to his statement; and the

> proceedings [a]re conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.

*Id.* at 165. The Court determined that, under such circumstances, a party opposing introduction of preliminary hearing testimony "had an effective opportunity for confrontation." *Id.*

¶17 Regarding the requirement that a party be given "an opportunity" to develop the testimony of the witness, Utah R. Evid. 804(b)(1)(B), the rule refers to the opportunity to examine the witness, not to whether the defendant actually availed himself of that opportunity, *State v. Garrido*, 2013 UT App 245, ¶ 18, 314 P.3d 1014. The *opportunity* for cross-examination "satisfie[s] the requirements of [the Constitution and the Rules of Evidence]." *Id.* ¶ 20. This principle is well-established in Utah law, predating even the codification of the Rules of Evidence. *See, e.g.*, *State v. King*, 68 P. 418, 419 (Utah 1902) ("By taking the testimony of the witness . . . in the presence of the accused upon the examination at a time when he had the privilege of cross-examination, this constitutional privilege is satisfied, provided the witness cannot, with due diligence, be found . . . . The constitutional requirement of confrontation is not violated by dispensing with the actual presence of the witness at the trial, after he has already been subjected to cross-examination by the accused[.]").

¶18 During the preliminary hearing, Defendant had the opportunity to cross-examine Witness; indeed, he admits as much in his appellate brief. It is therefore irrelevant whether trial counsel voluntarily elected to forgo some aspect of cross-examination due to counsel's strategy.[7] *Garrido*, 2013 UT App

---

7. Defendant makes much of the fact that the prosecution knew procuring Witness's testimony at trial would be more difficult than in the typical case because Witness was a homeless person.

(continued…)

245, ¶ 18. Indeed, forgoing or minimizing cross-examination at a preliminary hearing is a common practice among the defense bar.[8] But Defendant was not denied the opportunity to cross-examine Witness.

---

(…continued)

True enough. But like the prosecution, defense counsel knew that Witness was homeless. Defense counsel was likewise aware that the prosecution might have difficulty in securing the testimony of Witness and Victim at trial. In such a context, defense counsel could have anticipated that Witness and/or Victim might not be physically present at trial and that, if deemed unavailable, their testimony would be read for the jury. In the case of homelessness and similar circumstances—such as where a potential witness is terminally ill, seriously mentally ill, suicidal, a known drug addict, or an active-duty soldier who may be called up for combat deployment —there is a distinct possibility that the witness may vanish or otherwise become unavailable before trial. It may behoove defense counsel in such cases to take full advantage of any opportunity to cross-examine such witnesses. Then, if the testimony is read at trial, counsel's cross-examination is part of what will be read, and the jury will have a less one-sided version of the witness's testimony.

8. Justice Brennan, writing in dissent in *California v. Green*, 399 U.S. 149 (1970), the case in which the United States Supreme Court recognized that preliminary hearing testimony may be admissible under the prior testimony hearsay exception, *id.* at 165, articulated several reasons for this common practice, *id.* at 197 (Brennan, J., dissenting). He noted,

> First . . . the objective of [a preliminary] hearing is to establish the presence or absence of probable cause, not guilt or innocence proved beyond a reasonable doubt; thus, if evidence suffices to establish probable cause, defense counsel has little reason at the preliminary hearing to show that it

(continued…)

¶19 As noted previously, however, hearsay testimony is admissible under the prior testimony exception if, and only if, the party offering the evidence can show that the party opposing the introduction of the evidence had both "opportunity *and* similar motive to develop it." Utah R. Evid. 804(b)(1)(B) (emphasis added). To this end, Defendant, relying upon persuasive authority only, attempts to convince this court that

---

(…continued)

> does not conclusively establish guilt . . . . Second, neither defense nor prosecution is eager before trial to disclose its case by extensive examination at the preliminary hearing; thorough questioning of a prosecution witness by defense counsel may easily amount to a grant of gratis discovery to the State. Third, the schedules of neither court nor counsel can easily accommodate lengthy preliminary hearings. Fourth, even were the judge and lawyers not concerned that the proceedings be brief, the defense and prosecution have generally had inadequate time before the hearing to prepare for extensive examination. Finally, though counsel were to engage in extensive questioning, a part of its force would never reach the trial factfinder, who would know the examination only second hand.

*Id. See also Right of Confrontation: Substantive Use at Trial of Prior Statements*, 84 Harv. L. Rev. 108, 114 (1970) (characterizing as "troubling" "the [Supreme] Court's use of . . . preliminary hearing testimony" at trial, on the ground that "it had been subject to cross-examination," because "[g]enerally, there is little motivation for comprehensive cross-examination at a preliminary hearing"). Whatever the truth of these sentiments, they are not reflected in Utah law, *see supra* ¶ 18; therefore, members of the defense bar might do well to heed our suggestions in appropriate cases, *see supra* ¶ 18 note 7.

when "[t]rial counsel . . . initially questioned [Witness], at the preliminary hearing, . . . she did not have [the] same motive as she would have had at trial." Defendant further states that "[t]he purpose of a preliminary hearing is to determine probable cause, not [to] prov[e] the cause beyond a reasonable doubt. Thus, the cross-examination may not have been as thorough because they are only focusing on the basis for the arrest." We are not unsympathetic to this argument, but the Utah Supreme Court expressly foreclosed it in *State v. Brooks*, 638 P.2d 537 (Utah 1981), which is overlooked in Defendant's briefs on appeal.

¶20     Dismissing as meritless arguments *identical* to those raised by Defendant in this case, our Supreme Court concluded in *Brooks* that "counsel's motive and interest are the same in either [the trial or preliminary hearing] setting; he acts in both situations in the interest of and motivated by establishing the innocence of his client. Therefore, cross-examination takes place at preliminary hearing and at trial under the same motive and interest." *Id.* at 541. Thus, adhering to the rationale of *Brooks*, we determine that Defendant's challenge is unavailing, and we affirm the decision of the trial court to admit Witness's preliminary hearing testimony.

CONCLUSION

¶21     The trial court did not abuse its discretion by admitting Witness's preliminary hearing testimony when it found that Witness was unavailable to testify because, under the circumstances, the State made reasonable efforts to procure the testimony of Witness at trial. Because Defendant had an appropriate opportunity to cross-examine Witness, Witness's testimony from that hearing was admissible under rule 804.

¶22     Affirmed.

───────────