2015 UT App 291

# THE UTAH COURT OF APPEALS

KELSEY BROWN,
Appellee,
*v.*
ANTHONY BABBITT,
Appellant.

Memorandum Decision
No. 20140918-CA
Filed December 3, 2015

Third District Court, West Jordan Department
The Honorable Mark S. Kouris
No. 104400226

Terry R. Spencer, Attorney for Appellant

J. Preston Stieff, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1     Anthony Babbitt, having lost a separate but related appeal, *see Brown v. Babbitt*, 2015 UT App 161, 353 P.3d 1262, once again appeals the trial court's custody and parent-time orders regarding his and Kelsey Brown's child (Child). He raises six issues in the current appeal, three of which our previous decision resolved.[1] Babbitt's claims not resolved by our prior

---

1. These three resolved issues are (1) a challenge to the trial court's refusal to allow him, during a hearing held to determine the accuracy of the trial court's factual findings in the divorce decree, to present evidence purportedly demonstrating perjury by Brown; (2) a challenge to the trial court's decision limiting

(continued…)

decision are challenges to (1) the sufficiency of the evidence supporting the trial court's conclusion that Brown did not perjure herself regarding her residency during the divorce trial; (2) the trial court's conclusion that even if Brown had committed perjury, neither her alleged perjury nor her move to North Carolina constituted substantial and material changes in circumstances that would justify altering the court's original parent-time and custody determinations; and (3) the validity of the trial court's decision to further limit Babbitt's parent-time in the total absence, he alleges, of proper testimony or appropriate briefing from the parties on the issue. We affirm.

¶2      Babbitt and Brown married in July 2009. Although their marriage was brief—Brown filed for divorce six months later, less than a week after Child's birth—the legal battle for custody of Child has endured nearly six years.

¶3      Early in the divorce proceeding, the trial court appointed a custody evaluator to assess the best interests of Child. After receiving the evaluator's report, which flattered neither parent but was particularly negative as to Babbitt, the trial court conducted a two-day bench trial in December 2012 and ultimately awarded sole physical and legal custody of Child to Brown. The court supported this decision, included in the divorce decree entered in April 2013, with the evaluator's conclusion that Babbitt engaged in a pattern of cruel and

---

(…continued)
Babbitt's parent-time to less than the statutory minimum under Utah Code sections 30-3-32(2)(b) and 30-3-34(2) because it failed to make factual findings required under those sections; and (3) a claim that the purported violations of Utah Code sections 30-3-32(2)(b) and 30-3-34(2) amounted to a deprivation of Babbitt's fundamental due process right to parent Child. *See Brown v. Babbitt*, 2015 UT App 161, ¶¶ 8–12 & n.1, 353 P.3d 1262. We will have occasion to revisit these arguments, and their resolution in our prior decision, in the course of resolving the instant appeal.

deceitful behavior designed to manipulate those closest to him and that his behavior during the custody action demonstrated less a love for Child and desire to care for her than Babbitt's own interest in "winning" the custody dispute.[2] For example, the court found that Babbitt intentionally failed to exercise parent-time for over a year in order to fabricate a custodial interference claim against Brown. Babbitt also engaged in inappropriate behavior, such as trying to take Child with him following a supervised visit in May 2012 and calling Child by a name other than her own.[3]

¶4    The court also noted Babbitt's history of domestic violence, failure to obey previous court orders with regard to the payment of child support for his other children, and decision to feed Child milk-based formula during supervised visits after being ordered not to do so because Child had had adverse reactions to milk-based products. These factors led the court to

---

2. Not content to limit the dispute to the prolonged custody battle, Babbitt has expanded the war to two additional fronts. He sued in federal court the judge who presided over the divorce, along with the presiding judge who ruled on Babbitt's motions to disqualify that judge, and the executive director and members of Utah's Judicial Conduct Commission because the Commission dismissed his complaint against the two judges. *See* Memorandum Decision and Order Granting Motion to Dismiss, *Babbitt v. Kouris*, No. 2:15-cv-208 (D. Utah, Oct. 5, 2015), *available at* http://www.law.justia.com/cases/federal/district-courts/utah/utdce/2:2015cv00208/96007/17/. That lawsuit was recently dismissed. *See id.* And he has sued Child's North Carolina therapist in Utah's Third District Court. *See* Complaint, *Babbitt v. Bertolino*, No. 140907250, 2014 WL 5454638 (Oct. 20, 2014).

3. The evaluator's report characterizes such behavior as "consistent with behavior found in parents who abduct their children and hide them from their other parent."

express concern for Child while in Babbitt's care and thus to restrict Babbitt to less than the minimum statutory parent-time.

¶5 In the divorce decree, the trial court directed Babbitt to undergo psychotherapy with one of six specified psychotherapists. According to the divorce decree this therapy was to

> continue for at least 40 sessions in a calendar year. [Babbitt] may only be released from therapy when the therapist deems that he is no longer a danger to [Child], that he no longer uses manipulation and deceit for his own gain, and when the therapist can safely assure that [Babbitt] will not take [Child] from [Brown]. Additionally, the . . . therapist must conclude that [Babbitt] has ceased to engage in aggressive, manipulative or coercive behavior. [Babbitt] will provide the therapist a copy of . . . these Findings of Fact and Conclusions of Law.

Babbitt disputed the majority of the trial court's findings and filed a rule 52 motion for the court to reconsider or alter every finding adverse to him.[4] *See* Utah R. Civ. P. 52(b).

¶6 In June 2013, the trial court held a hearing on Babbitt's rule 52(b) motion and declined to make any changes to its findings. Also at this hearing, Babbitt raised the argument that Brown perjured herself during the original trial because Brown stated that she resided in Arizona, but Babbitt was convinced that Brown actually resided in North Carolina. The trial court,

---

4. On at least one other occasion Babbitt has had some difficulty accepting the sufficiency of evidence supporting findings that do not portray him in a positive light. *See State v. Babbitt*, 762 N.W.2d 58, 60–61 (Neb. 2009) (upholding Babbitt's conviction for criminal impersonation despite Babbitt's challenge "that the State failed to adduce sufficient evidence to support his convictions").

however, refused to address Babbitt's claim or allow Babbitt to introduce evidence supporting the claim during this hearing because "[t]hat's relitigating the case and we're not going to relitigate the case."[5] In July, Babbitt filed both his first motion to disqualify the trial court judge[6] and his first notice of appeal.[7]

---

5. In his prior appeal, Babbitt contended that this refusal was a violation of the "open courts" provision of the Utah Constitution. *Brown v. Babbitt*, 2015 UT App 161, ¶ 12, 353 P.3d 1262. Babbitt raises this argument again in the instant appeal with regard to the same alleged violation. We previously concluded that this argument was "moot because Babbitt ha[d] since been given the opportunity to present this evidence in a hearing on his petition to modify the decree of divorce." *Id.* After reviewing Babbitt's argument in this appeal and our decision in Babbitt's first appeal, we see no reason to disturb our previous ruling, which is the law of the case. *See generally IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 ("[U]nder the law of the case doctrine, 'a decision made on an issue during one stage of a case is binding in successive stages of the same litigation.' Thus, the doctrine allows a court to decline to revisit issues within the same case once the court has ruled on them.") (footnote omitted) (quoting *Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995)).

6. The presiding judge denied this motion. Babbitt's appellate brief fails to mention a second, prohibited motion to disqualify the trial judge, which the presiding judge also denied. *See* Utah R. Civ. P. 63(b)(1)(C) ("No party may file more than one motion to disqualify in an action.").

7. Babbitt's first appeal challenged the April 2013 divorce decree and the June 2013 denial of his rule 52(b) motion. *Brown*, 2015 UT App 161, ¶¶ 2–4. In that appeal, Babbitt argued—as he does here—that the court failed to make the findings required by Utah Code sections 30-3-32(2)(b) and 30-3-34(2) before restricting

(continued…)

¶7 Just over a year later, on August 13, 2014, the trial court held an evidentiary hearing related to Brown's alleged perjury and Babbitt's additional claims that Brown's "perjury" and move to North Carolina following the divorce constituted "substantial and material change[s] in circumstances supporting a modification of the existing custody and/or parent-time provision of the decree of divorce." At the hearing, both Babbitt and Brown had the opportunity to present evidence and the trial court heard and received evidence submitted by Babbitt.

¶8 Also at the hearing, counsel for Babbitt informed the court that Babbitt had completed the required psychotherapy some time before, but with a different therapist because none of the therapists listed in the order were available. Counsel assured the court that "within 10 days" the court would receive a letter from Babbitt's therapist attesting to the completion of the therapy and "saying the therapy on issues A through Z ha[d] been completed" as required by the trial court. The court told Babbitt that it would consider the letter in reaching its decision. Counsel for Brown also requested that the trial court decrease Babbitt's parent-time. Babbitt interposed no objection to the making of this request, but his counsel did argue that Babbitt's visitation should remain at two visits per month. Five days later, the trial court, in a letter directed to counsel for both parties, reiterated that the psychotherapist's letter must specify that all of the requirements imposed by the court had been satisfied.

---

(…continued)

his parent-time with Child. *Id.* ¶¶ 8–10. On this issue, we held that the trial court did not commit error because its findings were adequate to support its decision. *Id.* ¶¶ 9, 11. As counsel for Babbitt acknowledged at oral argument in the instant appeal, that decision necessarily disposes of Babbitt's claim as renewed in this appeal. *See id.* ¶ 11. Furthermore, because the trial court fulfilled its statutory responsibility, Babbitt's constitutional-rights argument premised upon the supposed violation of the same statutes fails as well. *See id.* ¶ 11 n.1.

¶9 On August 25, 2014,[8] about one week after receiving the court's letter, Babbitt's counsel filed a letter written by a licensed professional counselor (the LPC). The LPC's letter was deficient in nearly every material respect. The letter, dated January 31, 2013, stated that Babbitt completed therapy in December 2012, which was before the trial court issued the April 2013 divorce decree that required particularized therapy as spelled out in the decree and that was necessarily to be accomplished thereafter. As noted, the trial court had been forewarned that the LPC did not appear on the list of approved therapists from which Babbitt was supposed to choose. But the court had not been advised that the letter submitted by the LPC would document therapy completed pre-decree and that it would not specify that the several items mandated in the divorce decree had been completed. Contrary to what the decree required, the letter merely recited that Babbitt had completed therapy, was working on employing "I statements" and "on being fine with everyone not agreeing with him," understood that it would be harmful to take Child away from her mother, and had "developed different strategies to address [his] problems." Even more concerning, because the therapy conducted by the LPC was completed in December 2012, Babbitt could not possibly have presented the LPC with a copy of the trial court's Findings of Fact and Conclusions of Law, as the divorce decree required, because those findings were not even entered until some months later. And again, the therapy referred to in the letter was therapy that occurred prior to issuance of the divorce decree, not after.

¶10 In mid-September 2014, the trial court issued a memorandum decision addressing the perjury and residency issues as well as Babbitt's apparent bad faith in regard to his attempt to demonstrate completion of the psychotherapy

---

8. The trial court's September 17, 2014 order contains an apparent typographical error because it states that the court received the letter on *April* 25, 2014, even though Babbitt's counsel filed the letter on August 25, 2014.

ordered in the divorce decree. As to the perjury claim, the trial court concluded that Brown did not perjure herself at trial when she claimed to reside in Arizona, even though she "travelled frequently to Utah and North Carolina to visit family and for [Child] to see [Babbitt]." The court further concluded that even if Brown did perjure herself, Babbitt failed to show that Brown's perjury constituted a material change in the circumstances underlying the court's custody determination. Finally, the court concluded that even if Brown's recent move to North Carolina constituted a material change in circumstances, Babbitt failed "to show that modification would be an improvement for and in the best interest of [Child]." Babbitt's noncompliance with the psychotherapy component of the original divorce decree, coupled with his apparent bad faith in submitting a therapist's letter dated before entry of the divorce decree and which addressed an earlier round of therapy, gave the court "concern[] for the health and wellbeing of [Child]."

¶11 Given its concerns, the trial court denied Babbitt's petition to modify the divorce decree and instead decreased Babbitt's parent-time. The original divorce decree had ordered two monthly visits with Child, totaling six hours, but also providing that in early 2014, parent-time would increase to two monthly visits totaling eight hours. The trial court, in its September 2014 memorandum decision, amended Babbitt's parent-time by countermanding the change to eight hours and instead leaving his visits with Child at twice per month for a total of six hours.

¶12 Babbitt challenges the sufficiency of the evidence supporting the trial court's findings that neither Brown's alleged perjury nor her recent move to North Carolina constituted a material change in circumstances justifying a change in custody. Babbitt does so, however, without properly marshaling the evidence and by misusing the addendum to his appellate brief. This same failure characterized his prior appeal and was highlighted in our prior decision, and for the reasons explained there, we again decline to disturb the trial court's factual findings. *See Brown v. Babbitt*, 2015 UT App 161, ¶ 7, 353 P.3d 1262.

¶13    Babbitt's remaining claim is that the trial court violated the open courts provision of the Utah Constitution and the due process clause of the United States Constitution when it modified Babbitt's parent-time schedule. We disagree.

¶14    The trial court imposed a very specific therapy regimen in the divorce decree. *See supra* ¶ 5. One of several specified therapists had to be consulted post-decree, and the therapist had to certify, in writing, Babbitt's compliance with very detailed requirements. Despite counsel's assurances of imminent compliance, Babbitt did not consult one of the approved therapists in the post-decree timeline envisioned by the court, and the therapist's letter he submitted met none of the decree's requirements. While the court apparently acquiesced in Babbitt's consulting a different therapist upon being advised that Babbitt could not secure the services of any of the specified therapists, there was no corresponding change in the substantive requirements imposed by the trial court. Indeed, the court made a point of reiterating that those requirements continued to apply. Nonetheless, Babbitt wholly failed to comply with those requirements. The letter submitted on his behalf documented therapy that had been provided much earlier. And it included none of the specific assurances mandated by the decree. Thus, the submission of the LPC's letter did not satisfy the decree's requirements and, frankly, demonstrated a disregard for those requirements. And given how long he was given to comply and how specific the court was in spelling out its expectations, Babbitt's right to due process was simply not violated.[9] *See*

---

9. Despite his protest on appeal, Babbitt acquiesced in the trial court's reconsideration of his parent-time. During the August 13 hearing, the trial court informed Babbitt that the therapist's letter would be "include[d] . . . as part of [its] decision." Counsel for Brown, citing Babbitt's continued problematic behavior, violation of the court's order prohibiting Babbitt from taking Child to his home during visits, lack of empathy toward Child and Brown, and use of welfare checks on Child conducted at

(continued…)

*generally Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983) ("'[T]he demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved.'") (quoting *Rupp v. Grantsville City*, 610 P.2d 338, 341 (Utah 1980)).

¶15    As to the decision reached, it was well within the trial court's discretion given that Babbitt did not comply with the clear mandates of the divorce decree. Given this lack of compliance, the trial court could reasonably find that Babbitt remained a threat to Child. And Babbitt's apparent willingness to mislead the court about the timing and adequacy of his ordered therapy only buttresses the legitimacy of the court's concern.

¶16    The trial court had ample justification to amend its earlier order to eliminate the provision giving Babbitt an increased

---

(…continued)
Babbitt's request to harass Brown, asked the trial court to decrease Babbitt's parent-time. During the hearing, Babbitt neither contested nor objected to the court's renewed consideration of its prior order in this regard. If Babbitt had an objection to the trial court's reconsideration of his parent-time, the time to object was *during the hearing* when opposing counsel asked the court to reconsider its order and the court indicated that it might do so. *See, e.g.*, *Hodges v. Smoot*, 125 P.2d 419, 421 (Utah 1942) (determining that where there is "apparent[] if not complete acquiescence [in] what the court did as a matter of procedure," "[n]either party is in a position to complain as to [that] procedure" on appeal); *Clark Props., Inc. v. JDW-CM, LLC*, 2012 UT App 163, ¶ 8, 282 P.3d 1009 ("[W]hen a party is surprised by a court's action, . . . . it ha[s] an obligation to contemporaneously express those concerns in some way.").

amount of supervised parent-time.[10] And far from overreacting given its stated concerns, the court confirmed in its decision that after Babbitt completes the required psychotherapy, it could still consider allowing unsupervised parent-time.

¶17    Thus, the way forward for Babbitt is clear: he must successfully complete the required therapy to the satisfaction of the trial court. Having done so, and with the required assurances from his therapist, he may then qualify for increased parent-time and, perhaps eventually, unsupervised parent-time with Child, if the trial court determines that it would be in the best interest of Child. *See* Utah Code Ann. § 30-3-34.5(1), (5)–(6) (LexisNexis Supp. 2014).

¶18    Affirmed.

_____

10. Babbitt's counsel argues that the "new" six-hour restriction was the most restrictive order yet. But the only difference between the new order and the original decree is that the twice-a-month, six-hour parent-time scheme was to continue indefinitely rather than being for only four months before being automatically increased.