2016 UT App 141

# THE UTAH COURT OF APPEALS

JAMES WOODWARD,
Appellant,
*v.*
JULIE LAFRANCA,
Appellee.

Opinion
No. 20140620-CA
Filed July 8, 2016

Fourth District Court, Provo Department
The Honorable Steven L. Hansen
No. 064401496

Troy L. Booher, Noella A. Sudbury, Julie J. Nelson,
and Sara J. Pfrommer, Attorneys for Appellant

Brent D. Young and Dallas B. Young, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
STEPHEN L. ROTH and SENIOR JUDGE PAMELA T. GREENWOOD
concurred.[1]

ORME, Judge:

¶1    James Woodward (Father) again challenges the trial
court's denial of his petition to modify the child custody
provisions of the divorce decree between himself and Julie
LaFranca (Mother) regarding their child (Child). In his previous
appeal, *Woodward v. LaFranca*, 2013 UT App 147, 305 P.3d 181,

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

we identified a number of problems with the trial court's decision and reversed and remanded for the trial court to address those shortcomings. *Id.* ¶ 34. Because we determine that the trial court substantially complied with the mandate of our prior decision, we affirm.

BACKGROUND[2]

¶2     Father filed for divorce from Mother in July 2006, just before the birth of Child. *Id.* ¶ 2. At that time, Father and Mother stipulated to Mother's custody of Child "subject to Father's rights to parent time." *Id.* Just over three years later, in August 2009, Mother began making accusations—to the Division of Child and Family Services and to Father's employer—"that Child had been physically and sexually abused during Father's parent time." *Id.* ¶ 3. After investigation, however, "[a]ll of Mother's abuse allegations were determined to be unfounded." *Id.* Almost a year after the accusations began, in July 2010, Father filed a petition to modify the divorce decree, requesting custody of Child. *Id.* ¶ 4. That November, a domestic relations commissioner recommended transferring temporary custody of Child to Father on the ground that Mother's "repeated unsubstantiated abuse allegations" themselves constituted severe child abuse. *Id. See id* ¶ 5. Following Mother's objections to the transfer of custody to Father, the trial court took up the matter just over a year later. *Id.* ¶ 5. The trial court heard testimony from Mother and Father as well as from several experts, including a custody evaluator (Evaluator), Child's therapist (Therapist), and a court-appointed Special Master. *Id.* Although the expert testimony overwhelmingly supported Father, the trial court found that each expert lacked, for one reason or another, credibility or persuasiveness. *See id.* So the

---

2. For a more complete recitation of the facts underlying the instant appeal, see *Woodward v. LaFranca*, 2013 UT App 147, ¶¶ 2–5, 305 P.3d 181.

trial court, "relying primarily on Mother's testimony, . . . denied Father's petition to modify custody." *Id.*

¶3 Thus, somewhat uniquely, the instant case turns on whether judicial discretion extends so far as to permit the trial court to reject the testimony of *all* the experts that testified before it. *Compare Woodward*, 2013 UT App 147, ¶ 5, *with In re G.V.*, 916 P.2d 918, 920 (Utah Ct. App. 1996) (per curiam) (upholding a trial court's finding that the State's expert witness's testimony was more credible than that given by the mother's expert witness in a parental rights termination decision). *See also Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751 ("Clearly, the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony. Even where testimony is uncontroverted, a trial court is free to disregard such testimony if it finds the evidence . . . not credible.") (citation and internal quotation marks omitted).

¶4 The trial court originally dismissed as incredible the testimony of all the expert witnesses who testified at trial—Therapist, Evaluator, and the court-appointed Special Master—and made a number of factual findings and legal conclusions, almost all of which favored Mother. In Father's original appeal, we held that the trial court failed to adequately explain and justify its rejection of the expert witnesses' testimony and improperly weighed certain of the best interests factors relevant to the determination of custody. *See Woodward*, 2013 UT App 147, ¶ 34. Specifically, we held that the trial court exceeded its discretion when it entirely rejected Evaluator's testimony. *See id.* ¶¶ 15–19.

¶5 We also concluded that minor inconsistencies in Therapist's testimony concerning Mother's state of mind during therapy sessions did "not definitively demonstrate the inaccuracy of the Therapist's [testimony]" and that, accordingly, it was not reasonable to "question[] the Therapist's overall credibility" on that basis. *Id.* ¶ 10. Furthermore, although we held that the trial court did not exceed its discretion in assigning

little weight to the Special Master's testimony, we were "concerned with the fact that the court dismissed the Special Master's concerns as a threshold matter without evaluating those concerns in the context of the best interests factors." *Id.* ¶ 20. We noted that the Special Master's testimony "was relevant, in conjunction with the other evidence presented in this case, to the court's overall best interests determination," and we emphasized that it "should have been analyzed accordingly." *Id.*

¶6     We concluded that the trial court also erred in its consideration of the best interests factors because it

- found that the best interests factor of emotional stability weighed in favor of Mother without making any findings as to Father's emotional stability, much less considering "whether Mother was more emotionally stable than Father," *id* ¶¶ 27–28;

- failed to explain why it rejected Evaluator's opinion as to Child's bond with his stepbrother and apparently considered "the amount of time Child lived with his brother as determinative of their bond," *id.* ¶ 29;

- concluded, without further explanation, "that Child was more bonded to Mother than to Father because he had been raised primarily by Mother during the early years of his life," *id.* ¶ 30; and

- improperly focused on whether Mother's interference with Father's visitation was a material change in circumstances instead of "weighing the parents' relative ability to facilitate visitation," *see id.* ¶¶ 32–33.

Finally, although we concluded that the trial court did not exceed its discretion in finding that Mother did not abuse Child, *id.* ¶ 25, we questioned the trial court's conclusion that "[t]his factor does not weigh in favor of [Father]" because it neither made findings nor was there evidence presented at trial that Father had abused Child, *id.* ¶ 25 n.9 (alterations in original). We further pointed out that "if the court believed Mother had abused Child, just not severely, . . . this factor would actually preponderate in favor of Father." *Id.* Therefore, we instructed the trial court to "weigh this factor accordingly" in reconsidering the best interests factors on remand.[3] *Id.*

¶7     On remand, the trial court supplemented its custody order with forty pages of new material, but otherwise reissued most of the same findings, concluding once again that it was in Child's best interest for Mother to have physical and legal custody of Child.[4] Father again appeals, insisting that the trial

---

3. The abuse question presented in this case is atypical. Mother repeatedly claimed that Father physically and sexually abused Child. None of these claims were substantiated, but the trial court, in its original findings of fact, made no findings as to whether Father ever abused Child. Father's theory, embraced by the expert witnesses, was that Mother's many baseless reports, and the resulting police and medical investigations, subjected Child to a form of psychological and physical abuse. On remand, the trial court concluded that neither party abused Child.

4. We acknowledge that the trial court could—and should—have done more to make clear its compliance with our previous mandate. *See Woodward*, 2013 UT App 147, ¶ 34. And instead of starting over completely by restating nearly all of its previous findings of fact and conclusions of law, it would have been much more helpful had the trial court revisited only the factual findings and legal conclusions addressing the particular issues our prior opinion identified. *See supra* ¶¶ 4–6. After all, "[w]e [did] not intend our remand to be merely an exercise in

(continued…)

court did not follow our mandate on remand and erred in standing by its decision in Mother's favor.

ANALYSIS

¶8     A remand with specific instructions to the trial court necessarily precludes the trial court from considering issues outside the scope of remand, just as it constrains the appellate court, on further appeal following remand, from reconsidering the trial court's decision except as to the resolution of the issues previously identified.[5] *See Brown v. Babbitt*, 2015 UT App 291, ¶ 6 n.5, 364 P.3d 60 ("[U]nder the law of the case doctrine, 'a decision made on an issue during one stage of a case is binding in successive stages of the same litigation.' Thus, the doctrine allows a court to decline to revisit issues within the same case

-----

(…continued)
bolstering and supporting the conclusion already reached." *See Allred v. Allred*, 797 P.2d 1108, 1112 (Utah Ct. App. 1990). This observation does not, however, compel the conclusion that the trial court failed to substantially comply with our previous mandate. *See infra* ¶ 10.

5. Although this panel has some reservations about the prior decision, given the way the case is presented to us we are constrained to consider only those issues previously addressed by this court and remanded to the district court. *See supra* ¶¶ 4–6. As we recently emphasized in the context of standards of review, "[o]ur votes in this case demonstrate that [the procedural posture of a case] really do[es] matter." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶ 21, 361 P.3d 703 (Orme, J., concurring). In any event, our prior decision has "become the law of the case," and we take it as our starting point. *See Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 13, 216 P.3d 352.

once the court has ruled on them.") (quoting *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588); *Wasatch County v. Okelberry*, 2015 UT App 192, ¶ 30, 357 P.3d 586 (noting that a district court's discretion to reconsider issues "is limited when the case has been appealed and remanded" and that an appellate court is generally bound by its prior decision on the issues "should the case return on appeal after remand") (citations and internal quotation marks omitted). Thus, we are now only concerned with—and limit our consideration to—a relatively narrow question: Did the trial court adequately implement our mandate as expressed in the prior opinion?[6] *See supra* ¶¶ 4–6.

¶9    "'[W]hen an appellate court makes a pronouncement on a legal issue, [a lower tribunal] must not depart from the mandate.'" *Blauer v. Career Serv. Review Bd.*, 2012 UT App 120, ¶ 14, 276 P.3d 1246 (second alteration in original) (quoting *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 67, 82 P.3d 1076). "[T]he lower court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces . . . [and it] may not reopen the case to consider other issues or matters not included in the

---

6. Father appears to be correct in asserting that, "[i]n addition to reassessing the factors discussed by this court," the trial court "made findings on other best interest factors in an effort to bolster its determination that it was in the child's best interest for custody to be transferred to Mother." Such additional findings compared Mother to Father's new wife but failed to discuss Child's relationship with Father or Mother's relationship with her own extended family in determining the factor that the trial court described as "kinship, including extraordinary circumstances such as step-parents status," and included a mention of the fact that Mother, a teacher, "has summers off" under the factor of "ability to provide personal rather than surrogate care." *See Hutchison v. Hutchison*, 649 P.2d 38, 42 (Utah 1982).

mandate." *Okelberry*, 2015 UT App 192, ¶ 32 (first alteration in original) (citations and internal quotation marks omitted).

¶10　"Reviewing whether a district court complied with the mandate of an appellate court presents a question of law, which we review for correctness," *Nguyen v. IHC Med. Servs., Inc.*, 2012 UT App 288, ¶ 6, 288 P.3d 1084 (citation and internal quotation marks omitted), "granting no deference to the district court," *State v. Nicholls*, 2006 UT 76, ¶ 3, 148 P.3d 990. But insofar as the trial court substantially complied with our mandate, we review its factual findings for clear error. *Woodward*, 2013 UT App 147, ¶ 6. Furthermore, even if we were to conclude that the trial court had not substantially complied with our mandate, we would nevertheless affirm where it is clear in context that, despite the deviation, a contrary outcome as to that particular factual finding or legal conclusion would not change the trial court's ultimate decision. *See Pioneer Builders Co. v. KDA Corp.*, 2012 UT 74, ¶¶ 84–86, 292 P.3d 672 (declining to reverse on the basis of nonprejudicial error). Against this backdrop, we now consider the particular problems with the trial court's custody order as identified in our previous decision.

## I. Expert Witnesses

### A.　Therapist

¶11　In our prior decision, we criticized the trial court's outright rejection of Therapist's testimony and concluded that the relatively small inconsistency between the number of times Therapist testified that she reminded Mother of Therapist's role during therapy and the number of times she actually made a note of those reminders did "not definitively demonstrate the inaccuracy of the Therapist's assertion." *Woodward*, 2013 UT App 147, ¶ 10. To be clear, we agreed that the trial court was acting within its discretion to question Therapist's claim, but we did "not consider such an inconsistency to necessarily compromise the credibility of the Therapist's entire testimony as the trial court concluded." *Id.* ¶ 10 n.3.

¶12    On remand, the trial court again largely discounted Therapist's testimony, citing "various exaggerations in [her] testimony." But it acknowledged that her credentials were unchallenged, and it "considered and weighed [her testimony] in the context of the other experts' observations and opinions."

¶13    On remand, the trial court had discretion to consider anew Therapist's credibility as impacted by the inaccuracy of her testimony. *Id.* This is because, as noted, "the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony," *Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751 (citation and internal quotation marks omitted), even if that testimony comes from an expert witness. The trial court thus has discretion not only to choose between experts as to relative credibility but also to disbelieve all the expert testimony placed before it—provided "it can articulate a reasonable basis for doing so." *Woodward*, 2013 UT App 147, ¶ 19 n.4. *See In re G.V.*, 916 P.2d 918, 920 (Utah Ct. App. 1996) (per curiam). Because the trial court substantially complied with our mandate to meaningfully reconsider Therapist's testimony rather than to simply reject it out of hand, *Woodward*, 2013 UT App 147, ¶¶ 9–10, we cannot say that it abused its discretion, *see id.* ¶ 6.

B.    Evaluator

¶14    In the prior appeal, we highlighted a number of errors in the trial court's consideration of Evaluator's testimony. *See id.* ¶¶ 15–19. We noted that the trial court mischaracterized certain of his statements. *Id.* ¶ 15. We also noted that minor inconsistencies were "not sufficient to compromise the overall credibility of the Evaluator's report and testimony" where that testimony was consistent with his overall opinion that Mother's communications with Child while Child was in Father's care were improper because "they tended to give Child the impression that he was not safe with Father." *Id.* ¶ 16. We also concluded that the trial court lacked a reasonable basis for its conclusion that Evaluator "heavily relied" on the opinions of the

other experts, noting that it was not even clear how the trial court reached this conclusion given that Evaluator stated he made a conscious effort "to do [his] own evaluation." *Id.* ¶ 18 (alteration in original). Finally, we held that the trial court exceeded its discretion by rejecting Evaluator's testimony based on minor, irrelevant inconsistencies in his testimony or by mischaracterizing that testimony. *Id.* ¶ 19. This court recognized, however, the important caveat that "the trial court [was] free to reject specific opinions or recommendations of the Evaluator, where it [could] articulate a reasonable basis for doing so, and to weigh the Evaluator's recommendations in the context of all the other evidence before the court." *Id.* ¶ 19 n.4.

¶15   On remand, the trial court again disagreed with Evaluator's recommendation that Child's best interests would be served by granting custody to Father. It again insisted that Evaluator's interpretation of Mother's communications undermined Evaluator's credibility. And it again noted that Evaluator derived much of his information from the Special Master. In addition to this, however, it explained that Evaluator's testimony was compromised by several failures on his part. Namely, it concluded that Evaluator did not follow up with Mother's current and former employers to determine the nature of her interpersonal relationships with coworkers, that he failed to ask any questions or otherwise determine *why* she frequently changed attorneys, and that he did not ask her *why* her several previous marriages had failed—even as he failed to consider that Father had just as many failed marriages.

¶16   Furthermore, the trial court actually relied, in part, on Evaluator's testimony in its Amended Findings of Fact to establish the "[r]elative strengths of [Child's] bond" with his parents. Specifically, the trial court noted that it "does not take issue with [Evaluator's] opinion that [Child] demonstrates a 'strong bond with all parenting figures,'" and it found that Evaluator's opinion that Child's "relationship with all parenting figures is due to the excellent upbringing provided by [Mother]" was correct. The trial court disagreed, however, with Evaluator's

conclusion that this factor was neutral because, as the court saw it, "it is [Mother's] upbringing [of Child] which is responsible to a significant degree [for Child's] healthy ability to bond with his step-parents and his new brother."

¶17 Therefore, although this court lacks Mother's confidence that the trial court's amended decision "more than adequately explains a reasonable basis for the trial court's ruling," the decision does at least "articulate a reasonable basis" for rejecting Evaluator's specific opinions, just as it also weighs those "recommendations in the context of all the other evidence before the court." *Woodward v. LaFranca*, 2013 UT App 147, ¶ 19 n.4, 305 P.3d 181. Having determined that the trial court substantially complied with our mandate, we conclude that the trial court did not abuse its discretion in re-assessing Evaluator's testimony as it did.

C. Special Master

¶18 In our prior decision, we expressed concern that the trial court dismissed the Special Master's testimony without "evaluating [her] concerns in the context of the best interests factors." *Id.* ¶ 20. We also concluded that the *content* of the phone calls between Mother and Child was relevant to the ultimate custody determination and "should have been analyzed accordingly." *Id.*

¶19 The trial court failed on remand to address our concerns on this issue and did not substantially comply with our remand mandate. It neither seriously considered nor reasonably evaluated "the Special Master's concerns in the context of the best interests factors." *Id.* The closest it came to such an evaluation was to state that the Special Master was "very critical of [Mother's] insistence to speak by phone to [Child]" and that "[t]he Court has noted its criticism of the Special Master's order . . . placing [Child] in charge of the communication with [Mother]." Although the court continued from there to address *Father's* failure to facilitate these conversations, such discussion

fails to address the point made in our prior decision, i.e., the extent to which the *content* of those calls was relevant to the trial court's determination of the best interests factors. *Id.* As noted above, however, we will affirm the trial court's determination unless we conclude that "a contrary outcome as to *that particular* factual finding or legal conclusion would . . . change the trial court's ultimate decision." *See supra* ¶ 10 (emphasis added). In this instance it is clear that such is not the case. *See Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751; *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987) ("When acting as the trier of fact, the trial judge is entitled to give conflicting opinions whatever weight he or she deems appropriate."). We conclude that even if the trial court corrected its error on further remand, the correction would not alter the court's custody decision and, thus, the error is not prejudicial to Father.

## II. Best Interests Factors

### A. Evidence of Abuse

¶20 Although we previously concluded that the trial court did not exceed its discretion in finding that Mother had not abused Child, *see Woodward*, 2013 UT App 147, ¶ 25, we expressed concern about the manner in which the trial court framed this conclusion, *id.* ¶ 25 n.8, as well as the conclusion that "[t]his factor does not weigh in favor of [Father]," *id.* ¶ 25 n.9 (alterations in original). Specifically, we questioned whether the trial court's conclusion that Mother's repeated false accusations of sexual abuse against Father did not constitute "severe abuse" was meant to imply that the trial court did find that Mother abused Child, but not to a severe degree. *Id.* ¶ 25 n.8. We also wondered how the trial court could conclude that this factor did not favor Father, or at least be regarded as neutral, because there was no evidence from which it could have concluded that Father abused Child, *id.* ¶ 25 n.9, while there was sufficient evidence to conclude that Mother did—albeit in the atypical way previously described, *id.* ¶ 25. *See supra* note 3. We therefore instructed the trial court that, "[i]n considering the totality of the factors on

remand, [it] should weigh this factor accordingly." *Woodward*, 2013 UT App 147, ¶ 25 n.9.

¶21　On remand, the trial court concluded that this factor was neutral because *neither* parent abused Child. Our decision did not require the trial court to find that either party abused Child; indeed, we held that "[a]lthough the evidence could certainly support the opposite conclusion, . . . the trial court's findings relating to this factor were [not] clearly erroneous." *Id.* ¶ 25. And in the absence of evidence that either party abused Child in a more typical way, *see supra* note 3, whether Mother's many false reports of abuse were themselves abusive, or merely reflective of inept parenting, was something of a judgment call. Here again, we must conclude that the trial court substantially complied with our mandate.

B.　Emotional Stability

¶22　In our prior decision, this court held that the trial court abused its discretion in concluding that the emotional stability factor favored Mother. *Woodward v. LaFranca*, 2013 UT App 147, ¶¶ 27–28, 305 P.3d 181. Essentially, the trial court found that because Mother was a school teacher, had one stable friendship, and took Child to "a steady daycare provider," Mother was so emotionally stable that "this factor 'weigh[ed] heavily in favor of [Mother].'" *Id.* ¶ 27 (alterations in original). We explained that the trial court was not tasked with deciding whether Mother was emotionally stable, but rather "whether Mother was *more* emotionally stable than Father." *Id.* ¶ 28 (emphasis added). "Thus, we [were] unable to see how the trial court could have reached the conclusion that the emotional stability factor weighed in Mother's favor without making any findings regarding Father's emotional stability." *Id.*

¶23　Although the trial court's analysis of Father on remand was sparse and did not carefully address Evaluator's concerns about Mother's mental stability, the trial court noted the emotional toll that temporarily losing custody of Child had on

Mother, apparently by way of an explanation for her instability as perceived by Evaluator, and went on to find that "both parents are well-adjusted, of good moral character, and emotionally stable." Thus, the trial court found that this factor was neutral. To be sure, the trial court failed on remand to more specifically address Father's emotional stability and weigh it against Mother's. Considering that this analysis was what we requested, *see id.*, it is unfortunate that the trial court did not provide more substantive findings on remand. But reversal for yet further consideration of this one issue is very unlikely to produce a different outcome in the instant case. *See supra* ¶¶ 10, 19. Given this lack of prejudice, we decline to reverse on this issue. *See Pioneer Builders Co. v. KDA Corp.*, 2012 UT 74, ¶¶ 84–86, 292 P.3d 672.

C.    Child's Bond with His Stepbrother

¶24    We previously concluded that the trial court abused its discretion in concluding that Child's bond with his stepbrother "did 'not carry significant weight'" because the children had only lived together "for approximately fifteen months." *Woodward*, 2013 UT App 147, ¶ 29. We questioned the relevance of the *duration* of the stepbrothers' relationship in evaluating the *depth* and *importance* of that relationship—especially because the court failed to address Evaluator's opinion that a strong bond existed between the two. *Id.*

¶25    In its Amended Findings of Fact and Conclusions of Law following remand, the trial court agreed with Evaluator that Child's relationship with his stepbrother is important; it further acknowledged that Child's stepbrother exerts a positive influence on Child. The trial court therefore concluded that this factor favors Father, but it further stated that because the physical proximity of the two was "temporary," it did not accord the factor much weight in reaching its ultimate custody decision.

¶26    The trial court substantially complied with our prior decision's mandate by acknowledging Evaluator's findings and

conclusions concerning the relationship between Child and his stepbrother. *See id.* Indeed, the court actually concluded on remand that this factor favored Father. But Father challenges the trial court's further determination that this factor carried little weight. The trial court's decision that this factor carried little weight is a factual finding, which we review for clear error. *Id.*¶ 6.

¶27    It is true that the trial court again referred to the "'temporary' arrangement" that brought Child and his stepbrother into contact as a reason this factor did "not carry significant weight with the court." But in contrast to its original decision in which it postulated that a correlation existed between the duration of the brothers' contact and the depth of their relationship without citing any evidence, *Woodward v. LaFranca*, 2013 UT App 147, ¶ 29, 305 P.3d 181, the trial court was careful in its amended decision to acknowledge that the evidence did indeed tend to demonstrate that a strong bond existed between the two and that this relationship was a positive one for Child. Therefore, because the trial court substantially complied with our mandate, we cannot agree with Father that the trial court's findings in this respect were clearly erroneous.

D.    Child's Bond with His Parents

¶28    In our prior decision, this court also took issue with the trial court's conclusion "that Child was more bonded to Mother than to Father" because Child was "raised primarily by Mother during the early years of his life." *Id.* ¶ 30. We questioned "how Child's relative bond with each of his parents necessarily stems only from the amount of time he has spent with them" and again noted that the trial court overlooked Evaluator's salient testimony. *Id.*

¶29    As noted above, *see supra* ¶ 16, on remand the trial court agreed with Evaluator in part, finding that Child had bonded "with all parenting figures." But because the trial court further found that these strong bonds were a direct result of the

"excellent upbringing provided by [Mother] during those many months when [Father] was simply not available," it concluded that this factor favored Mother. Again, the trial court substantially complied with our mandate; we directed the trial court to consider Evaluator's testimony, *Woodward*, 2013 UT App 147, ¶ 30, and it did. And the trial court, while noting that Child spent most of his life with Mother, did not conclude that this fact was determinative. So long as the trial court can "articulate a reasonable basis for" its decision, we accord it substantial deference. *See id.* ¶ 19 & n.4. Because the trial court did so in this instance, it did not abuse its discretion.

E.      Facilitation of Visitation

¶30     The trial court, in its original Findings of Fact and Conclusions of Law, did not "consider the parents' relative willingness to facilitate contact and a positive relationship between the child and the other parent," *id.* ¶ 31, as required by Utah Code sections 30-3-10 and 30-3-10.2. Instead, it considered only whether the evidence of Mother's interference with visitation constituted a material change in circumstances. *See* Utah Code Ann. § 30-3-10(1)(a)(ii) (LexisNexis Supp. 2015); *id.* § 30-3-10.2(2)(c) (2013).[7] Because we concluded that it was unnecessary for the court to address whether a material change in circumstances had occurred under the circumstances of this case,[8] we determined that the trial court's original "conclusion

---

7. Although these statutes have been amended since Father initiated his petition, the changes are inconsequential in the context of this case. Therefore, for ease of reference, we cite the most recent version of the Utah Code Annotated.

8. The rationale for this conclusion was that the divorce decree in this case had not been adjudicated and that "when the trial court considers a petition to modify an unadjudicated divorce decree . . . it is unnecessary for the trial court to make a threshold determination of material change in circumstances." *Woodward*,

(continued…)

that Mother's interference was not a material change in circumstances [was] irrelevant." *Woodward*, 2013 UT App 147, ¶ 32. Moreover, that conclusion was potentially prejudicial to Father "because it placed an undue burden on Father to demonstrate Mother's severe interference with visitation rather than weighing the parents' *relative ability* to facilitate visitation." *Id.* (emphasis added).

¶31 This court also specifically directed the trial court,

> [i]n weighing best interests, . . . to consider which parent is *most likely* to act in the best interest of the child, including allowing the child frequent and continuing contact with the noncustodial parent, and each parent's ability to encourag[e] and accept[] a positive relationship between the child and the other parent, including the sharing of love, affection, and contact between the child and the other parent.

*Id.* ¶ 33 (emphasis and second and third alterations in original) (citations and internal quotation marks omitted). This standard, we noted, "puts both parents on an equal footing before weighing their relative willingness and ability to facilitate visitation." *Id.*

¶32 On remand, the trial court substantially complied with our mandate. For example, the trial court found that Mother had only once interfered with visitation, and it concluded that she interfered because of her good-faith, but unfounded, concern about abuse. And the trial court found that Mother generally

---

(…continued)
2013 UT App 147, ¶ 32. This court's intervening opinion in *Zavala v. Zavala*, 2016 UT App 6, 366 P.3d 422, repudiated this aspect of the prior *Woodward* opinion. *See id.* ¶¶ 17–18.

facilitated visitation and encouraged good relations between Child and Father. The trial court also concluded that Father's failure to facilitate "meaningful," lengthy conversations between Child and Mother indicated that "[Mother] is more likely to facilitate a relationship between [Child] and [Father], than [Father] is likely to facilitate a relationship between [Mother] and [Child]."

¶33   Whatever our misgivings about the trial court's concern regarding Father's failure to foster "meaningful [telephone] conversation" between Mother and Child when the latter was four years old, the trial court substantially complied with our mandate because it compared the relative strengths of each parent, as it saw them, and it considered all the evidence before it in doing so. *See Woodward v. LaFranca*, 2013 UT App 147, ¶ 33, 305 P.3d 181 (directing the trial court to compare the relative strengths of each parent to decide which parent would better facilitate Child's relationship with the other parent, rather than comparing the two parents on an unequal basis). Again, "[a]lthough the evidence could certainly support the opposite conclusion, we do not think the trial court's findings relating to this factor were clearly erroneous," and thus its decision did not constitute an abuse of discretion. *Id.* ¶ 25.

CONCLUSION

¶34   With limited exceptions, the trial court on remand substantially complied with our prior decision in this case. To the extent that it did not, we conclude that reversal and remand are not warranted, as a different outcome following a further remand is unlikely given the limited importance of those few areas where we could ask the trial court to take a third look and more fully explain itself.

¶35   Affirmed.

———————